# AIKEN, ADMINISTRATOR, *v.* CITY OF COLUMBUS.

## [No. 20,664.   Filed October 2, 1906.]

1. MUNICIPAL CORPORATIONS.—*Liability.*—*Schools.*—*Charities.*— *Police Power.*—Municipal corporations are not ordinarily liable for their conduct in reference to schools or charities, or in the exercise of the police power, such conduct being governmental and not local.   p. 141.

2. SAME. — *Purely Corporate Acts.* — *Liability.*—Municipal corporations are liable for negligence in the performance of purely corporate acts the same as an individual doing similar acts. p. 142.

3. SAME. — *Streets.* — *Defects.* — *Liability.* — *Grounds of.*—The grounds of municipal liability for damages caused by defects in streets are the municipality's exclusive control over the streets and power of taxation for the repair thereof.   p. 143.

4. SAME.—*Streets.*—*Lighting.*—*Duty as to Statutes.*—Municipal corporations, under §4301 Burns 1901, Acts 1883, p. 85, §1, may light their streets, but are not required, either expressly or by implication, to do so.   p. 144.

5. SAME.—*Liability.*—*Voluntary Exercise of Power.*—The fact that a municipal corporation voluntarily exercises certain powers, is a large factor in determining whether the municipality is liable for negligence in the performance of such powers.   p. 144.

6. SAME.—*Liability.*—*Voluntary Acts for Corporate Advantage.* —Municipal corporations are ordinarily liable for negligence in the performance of acts voluntarily done for their own advantage.   p. 144.

7. SAME.—*Proprietorship.*—*Liability.*—*Maxims.*—*Sic utere tuo ut alienum non laedas.*—Municipal corporations are liable, as other proprietors, for negligence in the care and control of their property voluntarily acquired for purposes partly or wholly corporate.   p. 145.

8. SAME.—*Streets.*—*Electric Lights.*—*Whether Governmental or Corporate Function.*—*Prevention of Damage Suits.*—While the lighting of streets incidentally checks crime and immorality and thus serves a governmental purpose, such lighting also becomes a corporate utility, sufficient to make municipal corporations liable for negligence therein, by the fact that it is of local convenience and prevents many damage suits brought

because of injuries from defective streets, the derivation of an income therefrom being unnecessary to establish such liability. p. 146.

9.   MUNICIPAL CORPORATIONS.—*Liability.*—*Proprietorship.*—*Governmental and Corporate Purposes.*—Where property is voluntarily held for benefits accruing to the municipality, or as a means of attaining such benefits, though it may also serve a governmental purpose, the municipality is liable for negligence in the control thereof. p. 147.

10.  SAME.—*Streets.*—*Failure to Light.*—*Negligence.*—The failure of a municipal corporation to light its streets, unless required by statute to do so, does not constitute negligence. p. 149.

11.  SAME.—*Liability.*—*Electric Lights.*—A municipal corporation is liable *ex delicto* for negligence in the management of its electric light plant. p. 150.

12.  SAME.—*Liability.*—*Immunity.*—*Public Policy.*—Public policy requires that the doctrine that municipal corporations are not liable for negligence in the performance of purely governmental matters, shall be kept strictly within its limits, official vigilance to prevent private wrongs being desirable. p. 150.

13.  PLEADING. — *Complaint.* — *Municipal Corporations.* — *Negligence.*—*Proximate Cause.*—A complaint alleging that defendant city negligently suffered one of its electric light wires to become weak and rotten, and that the fall of such wire caused plaintiff's injuries, is bad, since it fails to show that such wire fell because of its weak and rotten condition. p. 150.

14.  APPEAL AND ERROR.—*Technicalities.*—*Merits.*—Where the decision of the trial court was technically right, but wrong on the merits, the Supreme Court will ordinarily decide the case on the merits, especially where the merits of the case must be tried again in the lower court. p. 151.

15.  SAME.—*Revision of Judgments.*—*Power of Supreme Court.*—The general authority of the Supreme Court to review the judgments of lower courts necessarily includes the right to administer justice regardless of technicalities and arbitrary rules. p. 151.

16.  SAME.—*Decisions.*—*Right to Annex Conditions.*—The Supreme Court has the right, in order to administer justice, to mould its decisions so that proper amendments may be made or pleadings be filed below, and the merits of the case determined. p. 152.

17.  SAME. — *Defective Complaint.* — *Negligence.*—*Limitation of Actions.*—*Affirmance.*—A judgment for defendant on demurrer

to a complaint, technically bad, will be affirmed, where the statute of limitations has not barred a new action for the same cause.  p. 152.

From Bartholomew Circuit Court; *Marshall Hacker,* Judge.

Action by Lewis Aiken, as administrator of the estate of John M. Weed, deceased, against the City of Columbus. From a judgment for defendant, plaintiff appeals.  Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.  *Affirmed.*

*John W. Morgan* and *W. W. Lambert,* for appellant.

*Francis T. Hord, James F. Cox, Charles S. Baker, William H. Everroad, C. B. Cooper* and *C. J. Kollmeyer,* for appellee.

GILLETT, J.—By appellant's complaint in this action appellee was sought to be charged with negligence in the management of its public lighting system, whereby appellant's intestate was killed, on his own premises, by coming in contact with a live wire, belonging to appellee, which had fallen from its electric light pole in the adjoining street.  A demurrer was sustained to the complaint, and from the judgment which followed appellant appeals.

It is contended by counsel for appellee that, as it does not appear that the city made any use of said system other than for the purpose of lighting its streets, it was acting in a governmental capacity, and is therefore not to be held liable for the negligence of its employes and servants in the management of the property.

Municipal corporations proper, as cities and towns, do not enjoy as extended immunity from liability *ex delicto* as do public *quasi*-corporations, which are mere sub-

1.  divisions of the State, organized for the purpose of administering the local affairs of government.  As it is possible, however, to devolve upon cities and towns duties which they administer solely for the public good, it

follows that with respect to such duties they are regarded as acting on behalf of the State, and not in their private or corporate capacity. Speaking in general terms, it may be said that the duties which municipalities perform with respect to the public health, charities, and schools, in the protection of property against fire, and in the maintenance of the peace, are ordinarily regarded as performed as representatives of the general public, and in such cases cities and towns enjoy the same immunity from actions *ex delicto* as does the State.

We may at once put aside, as not involved in this case, all question concerning the nonliability of municipal corporations for their acts or omissions in respect to legis-

2. lative, discretionary, and *quasi*-judicial powers.

The omission in question involves the failure to perform a ministerial act, and, if it was a corporate duty, the municipality was guilty of a tort. It was said by Campbell, J., in *Sheldon* v. *Village of Kalamazoo* (1872), 24 Mich. 383, 385: "The doctrine is entirely untenable that there can be no municipal liability for unlawful acts done by municipal authorities to the prejudice of private parties. In this respect, public corporations are as distinctly legal persons as private corporations. * * * When the act done is in law a corporate act, there is no ground upon reason or authority for holding that if there is any legal liability at all arising out of it, the corporation may not be answerable. There is no conflict whatever in the authorities on this head." Judge Dillon, who has been at considerable pains to cast into doctrine the decisions of the courts relative to municipal responsibility for tort, says: "As respects municipal corporations proper, whether specially chartered or voluntarily organizing under general acts of the character before alluded to, it is, we think, universally considered, even in the absence of a statute giving the action, that they are liable for acts of misfeasance positively injurious to individuals, done by their authorized

agents or officers, in the course of the performance of corporate powers constitutionally conferred, or in the execution of corporate duties, and it is the almost, but not quite, uniform doctrine of the courts, that they are also liable where the wrong resulting in an injury to others consists in a mere neglect or omission to perform an absolute and perfect (as distinguished from a legislative, discretionary, *quasi*-judicial, or imperfect) corporate duty, owing by the corporation to the plaintiff, or in the performance of which he is specially interested." 2 Dillon, Mun. Corp. (4th ed.), §966. As far back as *Ross* v. *City of Madison* (1848), 1 Ind. *281, 48 Am. Dec. 361, this court declared: "It may also be considered as settled that municipal corporations are responsible to the same extent and in the same manner as natural persons, for injuries occasioned by the negligence or unskillfulness of their agents in the construction of works for the benefit of the cities and towns under their government." In four instances this declaration of the law has been approved by this court. *City of Logansport* v. *Wright* (1865), 25 Ind. 512, 515; *Stackhouse* v. *City of LaFayette* (1866), 26 Ind. 17, 22, 89 Am. Dec. 450; *Roll* v. *City of Indianapolis* (1876), 52 Ind. 547, 559; *City of Greencastle* v. *Martin* (1881), 74 Ind. 449, 452, 39 Am. Rep. 93. As was tersely stated in *Jones* v. *City of New Haven* (1867), 34 Conn. 1: "Where judicial duty ends and ministerial duty begins, there immunity ceases and liability attaches."

Counsel for appellee concede that if the wire had fallen in a public street, and the city knew, or ought to have known, of its defective condition, appellee would have been guilty of negligence in failing to keep the street safe, but it is to be remembered that the duty of a city or town in respect to the public ways therein grows out of the exclusive power which the municipality possesses over such ways coupled with the power of taxation for general purposes. *Grove* v. *City of Ft. Wayne*

(1874), 45 Ind. 429, 15 Am. Rep. 262; *Yeager* v. *Tippecanoe Tp.* (1881), 81 Ind. 46; Elliott, Roads and Sts. (2d ed.), §611. If the city would be liable for the omission of a duty in the case mentioned, *a fortiori*, ought it to be liable in a case involving the elements of a trespass?

There is really but one question in this case, and that is, was the omission a corporate dereliction, or was appellee's act in providing a public lighting system a governmental undertaking? In the determination of this question it is proper to consider the manner in which the power was conferred, the obligations which naturally flow from proprietorship, and the purpose for which the power was granted and exercised.

The city was under no obligation to light its streets. It enjoyed that authority, but the exercise of the power was wholly a matter of its own volition. §4301 Burns 1901, Acts 1883, p. 85, §1; *City of Indianapolis* v. *Scott* (1880), 72 Ind. 196; Tiedeman, Mun. Corp., §344a, and cases cited. As neither the letter nor the implications of the statute have made the lighting of streets a governmental duty, and as the city derives a benefit in its corporate capacity, as well as a local benefit, from the exercise of the power, the fact that it was voluntarily exercised is an important circumstance. The proposition finds illustration in a number of cases where the benefits might be said to be in a degree public, but where there was nevertheless room for the supposition that the local advantage to the corporation or its inhabitants was a moving consideration in the voluntary assumption of the power. Thus in *Riddle* v. *Proprietors, etc.* (1810), 7 Mass. 169, 187, 5 Am. Dec. 35, Parsons, C. J., in pronouncing the opinion of the court, says that it is one of the maxims of the common law "that a man specially injured by the breach of duty in another shall have his remedy by action. If the breach of duty be by an individual, there is no question; and why should a

corporation, receiving its corporate powers and obliged by its corporate duties with its own consent, be an exception when it has, or must be supposed to have, an equivalent for its consent?" It was held in *Oliver* v. *City of Worcester* (1869), 102 Mass. 489, 499, 3 Am. Rep. 485, that the city was liable for a defect in a path in the public common. Gray, J., in that case said that cities may be liable "for acts done in what may be called their private character, in the management of property voluntarily held by them for their own immediate profit or advantage, although inuring, of course, ultimately to the benefit of the public." In *Jones* v. *City of New Haven, supra,* the city was held liable for the failure to remove a decayed limb of a tree in the public square, whereby a person was injured, the corporation having properly taken upon itself the duty of caring for the trees.

We shall not dwell at length upon the obligations of proprietorship. Where a city has seen fit to acquire title to property in the management of which it is without let or restriction it would seem peculiarly just, at least where the property in part serves some municipal purpose, that there should be devolved upon the municipality that fundamental obligation of ownership which finds expression in the maxim, *"sic utere tuo ut alienum non laedas."* As said by Mr. Justice Field, in *Baltimore, etc., R. Co.* v. *Fifth Baptist Church* (1883), 108 U. S. 317, 331, 2 Sup. Ct. 719, 27 L. Ed. 739: "Grants of privileges or powers to corporate bodies like those in question, confer no license to use them in disregard of the private rights of others, and with immunity for their invasion. The great principle of the common law, which is equally the teaching of Christian morality, so to use one's property as not to injure others, forbids any other application or use of the rights and powers conferred." It is perhaps as much upon the ground of proprietorship as any other that it was held in *Twist* v. *City of Rochester* (1899),

55 N. Y. Supp. 850, affirmed in 165 N. Y. 619, 59 N. E. 1131, that a city was liable for permitting a patrol wire, heavily charged with electricity, to fall and remain in a public street. See, also, *Eastman* v. *Meredith* (1858), 36 N. H. 284, 72 Am. Dec. 302; *Thayer* v. *City of Boston* (1837), 19 Pick. 511, 31 Am. Dec. 157. We may, in this connection, mention that in *City of Greencastle* v. *Martin, supra,* it was held that the city was properly charged with negligence in the management of its pound, although the ordinance providing for the impounding of animals was an exercise of the police powers. It was decided in *City of LaFayette* v. *Allen* (1881), 81 Ind. 166, that the complaint therein, which was by a person who had been employed as engineer of the water-works of the municipality, for injuries received by the explosion of the boiler used in pumping water into the city water-pipes, stated a cause of action, although it is to be noted that there was no allegation in the complaint that the city derived a profit from the sale of water.

Coming to the purpose for which the power to erect an electric light plant was granted, it must be admitted that public lighting serves a governmental purpose, at

8. least in an incidental way, in that it is a check upon crime and immorality, but the element of local convenience to the inhabitants and the extent to which such lights protect the municipal treasury against damage suits, because of streets which have become temporarily or permanently unsafe, afford a very clear basis for the assertion that such lights are a municipal utility. The fact that a city or town, pursuant to statute, voluntarily constructs and maintains a work from which it derives a revenue has frequently been referred to as one of the markings of a municipal undertaking. No case, however, has come to our notice in which this element has been held essential to liability, but there are many authorities that either directly or in effect uphold the opposite view. *Twist* v. *City of*

*Rochester, supra; Missano* v. *Mayor, etc.* (1899), 160 N. Y. 123, 54 N. E. 744; *Jones* v. *City of New Haven, supra; Barney Dumping-Boat Co.* v. *Mayor, etc.* (1889), 40 Fed. 50; *Eastman* v. *Meredith, supra; Thayer* v. *City of Boston, supra; Oliver* v. *City of Worcester, supra; Dickinson* v. *City of Boston* (1905), 188 Mass. 595, 75 N. E. 68, 1 L. R. A. (N. S.) 664; *Wagner* v. *Portland* (1902), 40 Ore. 389, 67 Pac. 300; Webb's Pollock, Torts, 69; Jones, Neg. of Mun. Corp., §150; Williams, Mun. Liability for Tort, §31. At least as to property voluntarily held, if the exercise of the power confers a benefit upon the people of the community, in their local capacity, or if it is a means to the attainment of some municipal end, we are of opinion that the corporation is held to the exercise of due care concerning such property. The blending of the powers of local sovereignty and corporate capacity in one does not destroy the clear and well-settled distinction which the cases maintain, nor does the confusion render the process of separation impossible. *Western Sav. Fund Soc.* v. *City of Philadelphia* (1858), 31 Pa. St. 175, 72 Am. Dec. 730; *Bailey* v. *Mayor, etc.* (1842), 3 Hill 531, 38 Am. Dec. 669.

In the case last cited, which is a leading one upon the general subject under discussion, the question involved was as to the liability of the city of New York for the negligent construction of a dam by its water commissioners. A point of difficulty was presented, in that such commissioners were designated by the legislature, but the city had accepted the benefit of the act. In response to the argument that the undertaking was governmental in its character, Nelson, C. J., said: "The argument of the defendants' counsel confounds the powers in question with those belonging to the defendants in their character as a municipal or public body—such as are granted exclusively for public purposes to counties, cities, towns and villages, where the corporations have, if I may so speak, no private

estate or interest in the grant. As the powers in question have been conferred upon one of these public corporations, thus blending in a measure those conferred for private advantage and emolument with those already possessed for public purposes, there is some difficulty, I admit, in separating them in the mind, and properly distinguishing the one class from the other, so as to distribute the responsibility attaching to the exercise of each. But the distinction is quite clear and well settled, and the process of separation practicable. To this end, regard should be had, not so much to the nature and character of the various powers conferred, as to the object and purpose of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political, or municipal character. But if the grant was for purposes of private advantage or emolument, though the public may derive a common benefit therefrom, the corporation, *quoad hoc,* is to be regarded as a private company."

In *Barney Dumping-Boat Co.* v. *Mayor, etc., supra,* the question arose as to the liability of the city of New York for the negligence of persons in charge of a tug used by the city in connection with the cleaning of its streets. Judge Wallace, in referring to the duties of the street commissioner, said: "His duties, unlike those of the officers of the departments of health, charities, fire, and police, although performed incidentally in the interest of the public health, are more immediately performed in the interest of the corporation itself, which is charged with the obligation of maintaining its streets in fit and suitable condition for the use of those who resort to them." Following the last-cited case, it was held in *Missano* v. *Mayor, etc., supra,* that the city was liable for the negligence of the driver of an ash car who was employed in the street-cleaning department.

A case which is precisely like this in principle is *Dickinson* v. *City of Boston, supra.* In that case the city had by

ordinance established what it termed a lamp department, that included the lamps and other property used by the municipality in its system of street lighting, and the management of the department had been entrusted to an officer. This was done under a statute which authorized, but did not require, the city to maintain lamps to light its streets. An action was brought to recover for injuries received by the plaintiff's intestate, while on her own premises, owing to the fall of a defective lamp-post which stood in the public way. Answering the objection that the officer in charge of the department was a public officer for whose negligence the city was not responsible, the court said: "In suits for damages caused by defects in streets which at night may become dangerous to travelers because they are dark and unlighted it uniformly has been held that as a city or town is under no statutory requirement to light them an omission to do so does not constitute negligence. *Sparhawk* v. *City of Salem* [1861], 1 Allen 30, 32, 79 Am. Dec. 700; *Randall* v. *Eastern R. Co.* [1871], 106 Mass. 276, 8 Am. Rep. 327; *Lyon* v. *City of Cambridge* [1884], 136 Mass. 419; *Spillane* v. *City of Fitchburg* [1900], 177 Mass. 87, 88, 58 N. E. 176, 83 Am. St. 262. But if, under no obligation imposed by statute, the defendant undertook this service for the general convenience of its citizens and travelers within its borders, it also by so doing derived an incidental benefit by the protection thus afforded of decreasing the probability of actions against it for defective public ways, under Rev. Laws, c. 51, §§1, 18. An unlighted public way indeed may be dangerous when used at night, though not thereby rendered defective. If, however, it is out of repair, and this condition has been undiscovered, or if discovered not remedied, the probability that travelers using it would be less likely to be injured when lighted than if unlighted, is apparent and appreciable. It was unnecessary for the plaintiff to show that any direct commercial profit had been derived. The

indirect benefit thus conferred supplied a sufficient motive for the defendant's action. Having voluntarily undertaken the enterprise for its private benefit, and not acting in the performance of any public duty, it is liable for negligence in the management of its corporate property when used for such purpose.  \*  \*  \*  If the ·defendant lighted its streets as a matter of convenience and safety for those having occasion to use them at night, without being required by law to undertake the performance of such a duty, the superintendent of lamps for this purpose became its servant, for whose negligent conduct in their maintenance it was responsible."

We are satisfied that we are within the authorities in holding, as we do, that a city or town is answerable *ex delicto* for any direct invasion of the rights of third persons in the management of its public lighting system. While the doctrine of immunity of municipal corporations in matters purely governmental is too well established upon the authorities to be shaken, yet we are of opinion that public policy requires that the doctrine should be kept strictly within limits, to the end that so far as possible corporate liability may prompt those charged with responsibility in the government of cities and towns to be alert to prevent wrongs to third persons in the maintenance of municipal property.

The point is made, however, that although it appears that the fall of the wire was the proximate cause of the death of appellant's intestate, and that said wire had become weak and rotten, in which respect appellee is charged with negligence, yet it is not alleged that the wire fell by reason of such defective condition. Although it is clear from a reading of the complaint that this was an assumed fact, yet the omission of the allegation renders the complaint insufficient, and an affirmance must follow.

In passing, as we have, upon the substantial question in this case, whether appellee enjoyed an immunity from liability in the operation of its electric lighting system, we have decided the sole question argued by appellant's counsel, as well as the first and principal question discussed by counsel for appellee. We have not failed to consider whether, since the judgment must be affirmed, we ought not to pass over what appears to be the real controversy, that of municipal liability *ex delicto* in such cases, and base our decision on the clear but narrow ground of a failure to show that the negligence and the result stood in the relation of cause and effect. After much consideration, however, we have arrived at the conclusion that we may with propriety, and that we ought in justice, to decide the real question in the case. In no instance is this court disposed to decide moot questions, or controversies relative to rights in actions which may subsequently be brought; but in this case, finding that the main question is the threshold one, that it is the only one which admits of serious disagreement, and that the complaint is so framed as to show that it was the purpose to charge that the wire fell by reason of the defect, so that it is clear that the missing averment will be supplied, we conceive that our duty is not done in disposing of the case solely on said point and compelling appellant to await the time necessary to dispose of a second appeal, when to decide the real question now, in its order, in the light of full discussion, would be at once to correct the court below in what was evidently its misconcepttion of the law of the case, to the end that in this controversy justice may be administered, to borrow from the sounding phrases of the Constitution (Art. 1, §12), "completely and without denial; speedily and without delay." The general authority to review and revise necessarily includes the right to enforce the law and to administer justice, and the court, upon an investigation of the record, may so frame its judgment as

to prevent the defeat of justice by technical and arbitrary rules. It is a rule, which is also applicable to appellate tribunals, that if a court acquires jurisdiction for one purpose, it will retain it for all, and "our code means that this court shall decide upon the substantial merits of a controversy where it can be properly done." *Feder* v. *Field* (1889), 117 Ind. 386. See Elliott, App. Proc., §18. Many cases are to be found in the books in which courts of appellate jurisdiction, in affirming judgments, have, in order to protect the evident equities of one of the parties, added some restrictive provision, or added to the judgment of affirmance an order remanding the cause to the court below, either for the purpose of amending the declaration or the plea, or for some other action to be taken in the trial court. *Fidelity Ins., etc., Co.* v. *McClain* (1900), 178 U. S. 113, 20 Sup. Ct. 774, 44 L. Ed. 998; *In re Petition of Ingraham* (1876), 64 N. Y. 310; *Piper* v. *Hoard* (1887), 107 N. Y. 73, 13 N. E. 632, 1 Am. St. 789; *Johnson* v. *Elkins* (1904), 23 App., D. C., 486; *Witty* v. *Hightower* (1849), 12 Sm. & M. 478; *Manns* v. *Flinn* (1839), 10 Leigh 93; *Campbell* v. *Hughes* (1877), 12 W. Va. 183; *Gill* v. *Rice* (1861), 13 Wis. *549; *Van Orman* v. *Spafford* (1866), 20 Iowa 215; *McDonald* v. *Cruzen* (1868), 2 Ore. 259; *Powell* v. *Dayton, etc., R. Co.* (1886), 14 Ore. 22, 12 Pac. 83. And see *Coch* v. *Purcell* (1878), 45 N. Y. Super. 162. As said in *Powell* v. *Dayton, etc., R. Co., supra:* "This discretion, of course, is a judicial discretion—not arbitrary—and is always to be exercised in furtherance of justice." There is no occasion in this case for an order in the nature of a *procedendo,* as the claim is not barred by the statute of limitations, but, within the principle of the procedure just indicated, we regard ourselves as warranted in disposing of the essential question concerning which the parties have challenged the consideration and judgment of the court.

Judgment affirmed.