TODD ET AL. *v.* EHRESMAN ET AL.

[No. 19,461. Filed June 14, 1961. Rehearing denied
August 3, 1961. Transfer denied November 7, 1961.]

*Ball & Eggleston,* of Lafayette, *Morrison, Morrison
& Morrison,* of Frankfort, and *John S. Grimes,* of Indianapolis, for appellants.

*Robertson & Lynch,* of Lafayette, for appellees.

PFAFF, C. J.—Robert E. Warwick, a resident of Benton County, Indiana, died intestate July 25, 1957. The Purdue National Bank of Lafayette was duly appointed and qualified as Administrator of decedent's estate. (Hereinafter said Administrator will be referred to as Appellee Bank.)

This action was initiated when Appellee Bank filed its final account and related petitions, being petition to settle and allow accounts, petition to determine heirship, and petition for authority to distribute the estate, in which there was shown a balance on hand of $289,-641.71. Out of the aforesaid balance there yet remains to be paid the balance due on the Administrator's fee and the Administrator's attorneys' fee. The petition to determine heirship reads in part as follows:

"*Heirs.* Decedent was a bachelor and left surviving him no issue, nor parent, nor issue of a parent, nor grandparent of said decedent, and left surviving him twelve (12) living first cousins, to-wit:

"Six paternal first cousins, namely: G. Harold Warwick, R.R. 2, 56562 Pear Road, South Bend, Indiana; Clarence Yost, Dayton, Indiana; Russell Warwick, R.R. 5, Lafayette, Ind.; Eva Yost Ehresman, R.R. 5, Lafayette, Ind.; Merlin Warwick, R.R. 5, Lafayette, Ind.; Bertha Yost Jackson, 29 South 29th St., Lafayette, Indiana.

"Six maternal first cousins, namely: Clovis Martin, 451 East Green St., Frankfort, Indiana; Charles E. Martin, 534½ South 29th St., Lafayette, Indiana; Paul Dryer, 2091 West 4th St., Reno, Nevada; Martin A. Dryer, 1348 Shelby St., Indianapolis, Ind.; Russell Dryer, 2524 Berry Avenue, Los Angeles 64, Cal.; Charles A. Martin, 6145 E. Tuxedo St., Indianapolis, Indiana and each and all of said twelve living first cousins are in the same and nearest degree of kinship to the intestate per capita without representation and are therefore entitled to share in the distribution of this estate equally, share and share alike."

Thereafter the known first cousins once removed (hereinafter designated as second cousins) and the known first cousins twice removed (hereinafter designated as third cousins) filed their separate and several objections to said report claiming the right to participate in the proceeds of said estate as heirs of said

decedent. These objections are voluminous and for reasons hereinafter shown we do not deem it necessary to set them out or summarize them here.

A stipulation was entered by all the parties which was incorporated in the record by order of the court and is as follows:

"It is therefore, ORDERED, A*J*DUGED AND DECREED by the Court that all of the known surviving relatives of the decedent and their relationship to the decedent, as shown by the 'Family Tree' heretofore stipulated, are as follows:

"FIRST COUSINS: Eva Yost Ehresman, Clarence Yost, Russell Warwick, Clovis E. Martin, Paul Dryer, Russell Dryer, Bertha Yost Jackson, Robert Merlin Warwick, G. Harold Warwick, Charles E. Martin, Martin A. Dryer, Charles Martin.

"FIRST COUSINS ONCE REMOVES (2nd Cousins): Wray M. Widener, Lloyd W. Widener, Forest E. Martin, Keith Gordon Martin, Patricia Gene Tisdale, Clarence R. Martin, Carlton S. Martin, Mary M. Martin, Bernice Anderson McGehehe, Margaret Felix Tilford, Robert C. Widener, Ruby K. Rogers, Martha Bressler, Virginia Louise Kavanaugh, Bessie Sanders, Odas A. Martin, Delbert J. Martin, Gordon O. Martin, Bernard Felix, and any and all unknown decedants of . . . Felix, *A* deceased Son of *Martin* Martin Felix Derrick, deceased, an Aunt of the Decedent herein.

"FIRST COUSINS TWICE REMOVED (3rd Cousins): Robert- Neat West, Ra-ph Steinbaugh, Glen Steinbaugh, Richard Steinbaugh, Marguerite Todd, Walter Rusk, David Rusk, Wm. C. Davis, Delores Neat West, (now Montague) Earl Steinbaugh, John A. Rusk, Cecil Rusk, Charles Rusk, Velma David Bowman."

*Prior to* hearing upon the issues of fact and law pertaining to *the determination of heirship* as presented upon the then pending petitions to determine heirship by said respective appellants and the like issues pre-

sented upon the then pending final account and related petitions of Appellee Bank and the said objection of such respective appellants thereto, the court defined the ultimate issue presented on all pleadings to be: Where a decedent dies intestate leaving no persons surviving of closer degree of kinship to him than first cousins or first cousins once or twice removed, which class or classes inherit from the deceased and what proportion does each or all inherit? We agree that this was the issue presented. It is the first time this issue has been presented to us under the new Probate Code.

On October 26, 1959, pending the court's finding upon the determination of heirship, the chart showing the addition of Edward Charles Burch and John H. Burch to the family tree and offered in lieu of an original chart was presented and filed in open court, the order book entry being as follows:

> "Comes now the court, and a showing having been made that two first cousins once removed, namely; Edward Charles Burch and John H. Burch, were discovered after June 4, 1959, and a chart showing the addition of such names to the Family Tree, which chart is marked Exhibit A, has been offered in lieu of the original chart showing said Family Tree filed herein, the Court now FINDS that said Chart, Exhibit A, should be filed herein in place of the original Family Tree, and that the names of Edward Charles Burch and John H. Burch should be included as first cousins once removed.
>
> "It is, therefore, CONSIDERED, ORDERED AND AJDUGED that said Exhibit A be and the same is filed herein to replace the original chart showing the Family Tree, andthat Edward Charled Burch andJohn R. Burch are first cousins once removed of the decedent."

It was the judgment of the court that the heirs entitled to the distribution of the estate of Robert E.

Warwick are the surviving first cousins, namely; Eva Yost Ehresman, Clarence Yost, Russell Warwick, Clovis E. Martin, Paul Dryer, Russell Dryer, Bertha Yost Jackson, Robert Marlin Warwick, G. Harold Warwick, Charles E. Martin, Martin A. Dryer, and Charles Martin, and that all other parties take nothing.

Before initiation of any appeal, appellees Donald Martin and Eugene Martin as co-executors of the last will and testament and codicil thereto and of the estate of Clovis E. Martin, deceased, and appellees Mae Martin, Donald Martin, Eugene Martin, Lillie Mae Slipher and Ruth Miller, upon their verified petition showing the death of Clovis E. Martin, one of the surviving first cousins of Robert E. Warwick, deceased, which death occurred on February 15, 1960, were substituted by the trial court as proper parties in lieu of Clovis E. Martin, deceased, as being the personal representatives of said decedent and all of his devisees, and legatees named in the last will and testament and codicil thereto of said decedent and as all of said decedent's heirs-at-law succeeding to the interest of decedent Clovis E. Martin in the estate of the decedent Robert E. Warwick.

The motions for new trial of the second and third cousins were overruled by the trial court and the only error assigned here is the overruling of the motions.

Appellants who are second cousins of deceased and those who are third cousins have filed separate briefs to support their contentions. However, the arguments and contentions in each are substantially the same.

One of appellants' principal contentions is that the New Probate Code (§6-201 (c) 6, Burns' 1953 Replacement) changed the provisions of §5 of the Acts of 1852 (Former §6-2305, Burns' 1933). Sec. 6-201 (c) 6, Burns' 1953 Replacement, provides as follows:

"(6) If there is no surviving issue, or parent, or issue of a parent, or grandparent of the intestate, then to the issue of deceased grandparents *in the nearest degree of kinship to the intestate per capita without representation.* The degree of kinship shall be computed according to the rules of the civil law; that is, by counting upward from the intestate to the nearest grandparent and then downward to the relative, the degree of kinship being the sum of these two (2) counts."

The emphasized phrase is the portion they assert changed the provision of the Old Probate Code (§6-2305, *supra*) and which provided as follows:

"When no heirs under preceding rules. If there be no person entitled to take the inheritance according to the preceding rules, it shall descend in the following order;

"First. If the inheritance came to the intestate by gift, devise or descent from the paternal line, it shall go to the paternal grandfather and grandmother, as joint tenants, and to the survivor of them; if neither of them be living, it shall go to the uncles and aunts in the paternal line, and their decedants, if any of them be dead; *and if no such relatives be living, it shall go to the next of kin, in equal degree of consanguinity,* among the paternal kindred; and if there be none of the paternal kindred entitled to take the inheritance as above prescribed, it shall go to the maternal kindred in the same order." (Our emphasis.)

Appellants have with great skill presented a most ingenious argument to support their contention with the citation of numerous authorities but we find that most of them are based on an entirely different factual situation, and it is therefore our opinion that none of them supports their contention.

In 15 C. J. S. p. 976, the term "Consanguinity" is defined to be *vinculum personarum ab eodem stipite*

*descendentium,* the connection or relation of persons descended from the same stock or common ancestor; hence, having the blood of some common ancestor, relationship by blood.

Websters International Dictionary defines the word "Consanguinity" as the state of being related by blood or descended from a common ancestor; blood relationship. (Other similar definitions from various law dictionaries are called to our attention. See also Words & Phrases, Vol. 8A, p. 177.) It then defines "Next of Kin" as being *the person or persons in the nearest degree of relationship by blood to a person; hence those blood relatives (often called statutory next of kin) of a person who in case of his death intestate will be entitled by virtue of the statute of distributions to share his estate.*

It seems obvious to us from this understanding of the meaning of the questioned phraseology that it is crystal clear that in enacting §6-201 (c) 6, *supra,* that the legislature intended to make this clause even more definite and certain than the prior Act, that under such circumstances only those persons "nearest in kinship to the intestate" who survived such intestate should participate in his estate. It is also a recognition and approval of the decisions of this court under the prior Act.

In the case of *Avery* v. *Vail* (1915), 60 Ind. App. 99, 108 N. E. 599, the facts as stated by this court show that the intestate left surviving him ten living first cousins and numerous second cousins, the children of deceased first cousins, and several third cousins, the children of a deceased second cousin. The trial court stated its conclusions of law by which the second and third cousins were adjudged to have an interest in the funds proportionate to their interests in the land which were ascertained by making first cousins the basis of

the distribution and allowing second cousins to take by representation the interest of their deceased parents, the cousins of the deceased, and where a second cousin had died leaving children, the children were given the share that would have gone, under the foregoing rule, to their parent, if living.

No question is made about the correctness of the findings and it is conceded by the appellants that if on the facts found second and third cousins are entitled to share at all in the estate, the judgment is right, but it is earnestly insisted that the living first cousins of the deceased are "the next of kin, in equal degree of consanguinity" and therefore entitled to the estate to the exclusion of the second and third cousins, who are of a more remote degree of consanguinity.

In reversing that judgment this court after reviewing numerous cases on the subject said:

"The policy of excluding the rule of inheritance by representation, or *per stirpes*, when the estate is taken by collateral kindred, is generally approved in other jurisdictions, and most of the states have statutes on the subject, some of which do not extend the rule as far as it is applied in Indiana. The decided weight of authority denies, or very greatly limits, the application of the principle where the estate is taken by collateral kindred, and the policy prevails generally of stopping the line of inheritance at the first, or some other designated class, of collateral kindred, who survive the ancestor and are capable of inheriting the estate."

Thus we see that under the prior law, which was not as definite and positive as the provisions of the New Code, living first cousins took as against the claims of second and third cousins.

In the case of *Daily* v. *Pugh* (1925), 83 Ind. App. 431, 131 N. E. 836, the court in approving the rule an-

nounced in the case of *Avery* v. *Vail, supra,* said in part:

"... if the argument made and the authorities cited by appellants convinced us that the construction of said §2994, *supra,* for which they contend was sustained by the better reason and the greater weight of authority, we would feel impelled nevertheless, to adhere to the construction placed on the same by this court in the case of *Avery* v. *Vail, supra,* by reason of the doctrine of *stare decisis,* so often declared and applied in this state. . . . This doctrine is especially applicable where, as in this case, a decision construing a statute affecting the title to real estate has stood for such a length of time, as to become a recognized rule of property. The reason for its existence, and the salutary effect of its application, may be found in the following cases: . . . Our attention has been called to the fact that the construction of the statute for which appellees contend rests on a decision in a single case, but this would not, of itself, render it any the less our duty to apply the doctrine in question. . . . This is in harmony with the rule in other jurisdictions. . . . It will be observed that the decision in the case of *Avery* v. *Vail, supra,* was rendered more than six years ago, and petitions filed therein for a rehearing in this court, and a transfer of the same to the Supreme Court, were each denied more than five years ago. Since said decision was rendered and said rulings were made, three regular sessions of the legislature have convened and at least two special sessions have been held, but no change was made in the section of the statute we are now considering. It may be justly claimed, therefore, that the legislature had acquiesced in the construction which this court had theretofore placed on said section. Under these circumstances, no valid ground exists for holding that the decision relied on is too recent to afford a basis for the application of such doctrine. . . . It is very evident that during the time that had elapsed since the decision in the case of *Avery* v. *Vail, supra,* was rendered, and the petition to transfer the same to the Supreme Court was denied, conveyances of real estate may have been accepted,

and large sums of money may have been invested in reliance thereon. To overrule that case at this time, would render such conveyances ineffective, and such investments worthless. It is to prevent such results that the doctrine of *stare decisis* is applied in proper cases. . . .

"Appellants contend, however, that the decision in the case of *Avery* v. *Vail, supra,* should not be made the basis for an application of the doctrine of *stare decisis.* They assert that it is only the decisions of courts of last resort or final determination that can be made the basis for an application of that doctrine, and that this is not such a court. We cannot agree with appellants that courts of the character of this court either cannot or should not adhere to their own decisions under the doctrine stated. On the other hand, we hold that they not only may, but that it is clearly their duty to do so, in all proper cases. This court was established by the legislature in 1891, pursuant to express authority given it by the Constitution, and was given at that time, and has had continuously ever since, a wide range of jurisdiction in appealable cases. Appeals in actions to quiet title to real estate have been among the cases within its jurisdiction since 1901, and in such cases, as in many others, there is and has been no provision for an appeal from its decisions. In this respect, at least, it is a court of last resort in such cases, and, in fact, in every other respect, except that a case decided by this court may be transferred to the Supreme Court, where, in its opinion, the decision of this court contravenes a ruling precedent of that court, or a new question of law is directly involved and was decided erroneously by this court, and a petition for such transfer has been filed by the losing party, as provided in §1358 Burns' 1926, §1394 Burns' 1914. In most of the cases appealed to this court, its opinions are given in writing, and this is made compulsory where the judgment is reversed, by the provisions of §1417, Burns' 1914. The decisions of this court, embodied in these written opinions, cover a wide range of subjects, and, unless in conflict with a decision of the Supreme Court, must be accepted as authoritative declarations of the law of this state on the questions involved, until over-

ruled, disapproved, or a contrary decision is rendered, by the Supreme Court. . . . To hold that this court either cannot or should not make a prior decision rendered by it the basis for an application of the doctrine under consideration would create uncertainty as to what the law is in this state in many instances, and lead to hopeless confusion in that regard. Under such a holding, this court, with its possible changing membership every two years, and consequent change in individual views as to the construction of statutes and application of legal principles, would feel free, and, in fact, would be free, where not forbidden by a decision of the Supreme Court, to wholly disregard what had theretofore been declared by this court to be the law, and to substitute therefor their individual opinions. The result of such a course would be so disastrous and far reaching in its evil effects as to be intolerable. To avoid such results, courts of appeal generally have adopted and applied the doctrine of *stare decisis*, and thereby given effect to the general rule laid down by the early law writers, and quoted with approval by many courts, that: 'When a rule has once been deliberately adopted and declared, it ought not to be disturbed unless by a court of appeal or review and never by the same court except for very cogent reasons and upon a clear manifestation of error.' . . . The Supreme Court of this state, after quoting the same from Cooley, Constitutional Limitations, declared the rule to be a wise one. . . . This court followed this rule by an application of the doctrine of *stare decisis*, based on its prior decision."

Too often we are prone to forget the admonition so ably expressed by Judge Batman. We feel that after forty years it is well to again call it to the attention of the bench and bar.

This court in *Brundage* v. *Hoffman* (1958), 128 Ind. App. 515, 150 N. E. 2d 688, had before it a case arising before the New Code became effective in which the intestate left property which came from neither maternal nor paternal ancestors, and which thereby, by the third

section of said statute, was required to be divided in half, one-half going to the next of kin on the paternal side, and the other one-half going to the next of kin on the maternal side. On the paternal side the intestate left surviving him living first cousins only, and on the maternal side the intestate left surviving him first cousins once removed only. The intestate did not leave living first cousins *and* first cousins once or twice removed on the *same* side of the family, neither paternal nor maternal, and the court therefore adjudicated that each one-half of the estate should be and is treated as a distribution of a separate estate passing to the next of kin on each particular side, maternal and paternal. The apportionment and distribution of the estate was made as if there were two estates instead of one and on neither side, paternal or maternal, and in neither estate were there any controversies between living first cousins and first cousins once or twice removed on *the same side,* because in fact, on the paternal side there was only a first cousin and no descendants of any deceased first cousins, and on the maternal side there were only first cousins once removed and no living first cousins. As the court explained in an unanimous decision, with no dissents, in the *Avery* v. *Vail* case, there were no maternal descendants in different degrees, namely, first cousins and descendants of deceased first cousins, so the controversy was as to those entitled to inherit the whole estate, first cousins and/or first cousins once or twice removed, and the court decided the first cousins only.

Finally, the courts may consult with the probate code study commission, under provisions of §6-104, Burns' 1953 Replacement, to determine "the underlying reasons, purposes and policies of the act and may be used as a guide in its construction and application." Our atten-

452

tion is also called to §201 (c) (6), *supra,* which changes the present law by eliminating the possibility of inheritance "by persons related to an intestate more remotely than through the intestate's grandparent."

On the facts in this case, we are of the opinion that the decision of the trial court is in harmony not only with the provisions of the New Code but also in accord with the well settled principles of law as shown by the authorities heretofore cited.

Judgment affirmed.

Bierly, Gonas and Kelley, JJ., concur.

NOTE.—Reported in 175 N. E. 2d 425.