GROSS INCOME TAX DIVISION *v*. CITY OF GOSHEN.

[No. 1268A219. Filed November 19, 1969. Rehearing denied January 5, 1970. Transfer denied April 7, 1970.]

*Theodore L. Sendak*, Attorney General, *Hart E. Meyer*, Deputy Attorney General, for appellant.

*Philip C. Barker*, City Attorney, Goshen, for appellee.

LOWDERMILK, P.J.—Appellee, The City of Goshen, a fourth class city, which owned and operated an electric generating and distribution system in the City of Goshen, Elkhart County, Indiana, on the 10th day of July, 1961, entered into an

agreement for the sale of a portion of its electric generating and distribution properties to Northern Indiana Public Service Company. On the 30th day of November, pursuant to said July agreement, the City of Goshen received the purchase price from Northern Indiana Public Service Company of $2,066,064.00; thereafter, the appellant imposed a gross income tax and penalty on this transaction in the total amount of $30,334.87, which was paid by the appellee to appellant on October 2, 1964, with interest. This action is for the refund of the moneys paid to the appellant in payment of said tax and penalty, together with interest at the rate of six per cent (6%) per annum.

Paragraph II of the complaint reads as follows:

"The plaintiff complains of the defendant and for a second cause of action alleges and says:

"1. That on or about the 1st day of November, 1961 and at all other times material to this pleading, the City of Goshen, Indiana, was and is a municipal corporation, the same being a fourth class city, which owned and operated an electric generating and distribution system in the City of Goshen, County of Elkhart and State of Indiana.

"2. That on or about said date, plaintiff entered into an agreement for the sale of the distribution system and certain of its physical properties to Northern Indiana Public Service Company, a privately owned utility in the State of Indiana and at the same time agreed to discontinue operation of its generating plant and sale of electricity so generated in said City, granting to Northern Indiana Public Service Company a new franchise for such activity. In consideration thereof, the City of Goshen, Indiana, d/b/a City Light and Water Works received a purchase price of $2,066,064.00.

"3. That thereafter as a result of such transaction, the defendant proposed to assess an additional gross income tax to plaintiff.

"4. That thereupon the plaintiff filed protest with defendant of the proposed assessment of additional tax and the statutory hearing was held by defendant on said protest resulting in a denial thereof on the 18th day of September, 1964, together with notice and demand for payment, in the amount of $30,334.87 given to plaintiff.

"5. That thereafter plaintiff paid pursuant to said notice and demand, the sum of $30,334.87 to defendant.

"6. That at the time of said sale, plaintiff was obligated to pay and discharge its issued and outstanding revenue bonds of said utility in the amount of $534,000.00 which bonds were redeemed out of said purchase price.

"7. That the sale upon which defendant imposed and collected Gross Income Tax constituted a sale of both tangible and intangible property. The sale price of the tangible property being $455,299.70 and the balance of the sale price being received by plaintiff in payment for its intangibles in the amount of $1,610,764.30.

"8. That on the 1st day of November, 1961 and at all other times material to this pleading, the City of Goshen, Indiana, was an organization organized and operated exclusively for civic purposes.

"9. That $1,610,764.30 of the purchase price received by the City of Goshen, Indiana represented consideration for sale of an intangible and was specifically exempt from taxation under the provisions of the Indiana Gross Income Tax Law in full force and effect at the time of said sale, and that defendant wrongfully and erroneously assessed and collected gross income tax and penalty based upon that portion of said sale price in the amount of $30,334.87.

"10. That the defendant is indebted to the plaintiff for the amount wrongfully assessed and collected together with interest thereon from the 2nd day of October, 1964 which will continue to accrue until said amount is repaid.

"WHEREFORE, plaintiff prays judgment in the amount of $50,000.00 and for all further proper relief."

To the second paragraph of complaint appellant filed answer of no information, or a denial of each and every rhetorical paragraph thereof.

The trial court handed down its opinion in due time, which opinion is in the words and figures as follows, to-wit:

"This cause having been submitted to the Court for trial without the intervention of a jury and the Court having heard the evidence and studied the written briefs submitted by counsel herein and being duly advised in the premises now finds that the City of Goshen in originally determining

to operate an electric utility acted in its private or proprietary capacity; and that in all phases of the operation of such utility, together with going out of business, said City was acting in its private or proprietary capacity.

"The Court further finds that the sale of its electric utility, by the City of Goshen, was made by the City in its private or proprietary capacity and not in its governmental capacity.

"The court therefore finds for the Defendant and against the Plaintiff upon Paragraph One of Plaintiff's complaint.

"The Court further finds for the plaintiff and against the defendant on Paragraph Two of plaintiff's complaint and that the matters and things stated and set forth in Rhetorical Paragraphs Numbered 1, 2, 3, 4, 5, 6, 8 and 10 of Paragraph Two of plaintiff's complaint are true and proven.

"The Court further finds that $1,578,564.00 of the $2,066,064.00 received by the plaintiff pursuant to its agreement with Northern Indiana Public Service Company was in fact received by plaintiff in payment for its franchises, good will and going concern value and that the balance of said moneys were received by plaintiff in payment for tangible assets. The Court further finds that that portion of said purchase price received by plaintiff in payment for its franchises, good will, and going concern value was received in payment for an intangible and was therefore specifically exempt from taxation under the provisions of the Indiana Gross Income Tax Law and that defendant wrongfully and erroneously assessed and collected Gross Income Tax and penalties from plaintiff in the amount of $30,334.87 which amount was paid by plaintiff on October 2, 1964 and that plaintiff is entitled to the return thereof together with interest thereon at the rate allowable by law.

"IT IS THEREFORE CONSIDERED AND ADJUDGED by the Court that the Defendant have judgment against the Plaintiff upon Paragraph One of Plaintiff's complaint and that the Plaintiff take nothing by said Paragraph One of its complaint.

"IT IS FURTHER CONSIDERED AND ADJUDGED by the Court that the Plaintiff have judgment upon Paragraph Two of its complaint and that the plaintiff have and recover of the defendant the sum of $35,938.51 together with the costs of this action which said amount shall bear interest at the rate allowable by law, from this date."

Afterward, the appellant, defendant below, filed its motion for a new trial, directed to Paragraph II of plaintiff's complaint and charged that it was not sustained by sufficient evidence and was contrary to law, together with a memorandum covering said specific grounds. The motion for new trial was overruled and this appeal followed, with the appellant's assignment of error being that the court erred in overruling appellant's motion for new trial.

Appellee takes the position that the appellee is a "institution, group or body" within the meaning of Burns' Ind. Stat. Anno. § 64-2606 (i) and that to the extent the same represented proceeds from the sale of an intangible, the receipts of appellee from performance by appellee of its agreement with the Northern Indiana Public Service Company dated July 10, 1961, were exempt from taxation under the provisions of the Indiana Gross Income Tax Act.

The parties in the trial of this cause introduced much evidence on the sale price of the public utility, on depreciated values, and the price of tangibles and intangibles.

Appellant contends that the categories "institutions, trusts, groups and bodies . . ." do not include municipal corporations. First, because the Legislature obviously would have included municipal corporations if they so intended and secondly, that Section 1, Chapter 15 of the Acts of 1939 (Burns' Ind. Stat. Anno. § 64-207) specifically says it does not exempt any city or town from the requirements to pay its tax on its gross receipts under the Gross Income Tax laws.

Appellee contends that the Legislature intended favorable tax treatment for any "civic organization." We believe that a civic organization is ordinarily a group of people brought together for the promotion of a city or community or to alleviate the hardships and needs of some of our more unfortunate citizens and not for private benefit. (Service clubs are examples of civic organizations and they operate within

the above definition and certainly are not part of a city or municipal government.)

Burns' § 64-2606 (i) reads, in part, as follows:

"There shall be excepted from the gross income taxable under this act * * * (i) Amounts received by institutions, trusts, groups and bodies organized and operated exclusively for * * * social and/or civic purposes and not for private benefit, as contributions, tuition fees, initiation fees, matriculation fees, membership fees, and earnings on, or receipts from sales of, intangible property owned by them: * * * Provided, further, That it is not the intention of the foregoing language to exclude any gross income from taxation under this subsection except as is specifically set out herein."

It is true that the word "civic" as used in the exemption statute may denote selflessness, and civic organizations in their usual and ordinary sense work selflessly for the aid of others and the furtherance of good government.

We cannot accept appellee's argument that "any city organized to exercise the powers given by our laws to it is a 'civic' organization."

Burns' Ind. Stat. § 64-2601, 1969 Cum. Pocket Supp., "Definition of terms . . ." reads, in part ,as follows:

"(a)    When used in this act, the term 'person' or the term 'company' herein used interchangeably, means and includes any individual, assignee, receiver, commissioner, fiduciary, trustee, executor, administrator, institution, bank, consignee, firm, partnership, joint venture, pool, syndicate, bureau, association, cooperative association, society, club, fraternity, sorority, lodge, corporation, *municipal corporation or any other political subdivision of the state engaged in private or proprietary activities or business,* estate, trust, or any other group or combination acting as a unit, and the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context." (Our emphasis.)

The trial court, in its findings, as heretofore set out, found the appellee, in originally determining to operate an electric

utility acted in its private and proprietary capacity, and that in all phases of such utility, together with going out of business, said city was acting in its private or proprietary capacity. The court further found the sale of its electric utility was made by the city in its private or proprietary capacity and not in its governmental capacity.

We cite the following authorities and reasons showing the city was acting in a proprietary capacity:

*Department of Treasury* v. *City of Linton* (1945), 223 Ind. 363, 60 N. E. 2d 948. In this case, the city of Linton owned and operated water, gas and electric utilities. It purchased from private corporations the gas and electricity which it sold and distributed through and over distribution systems owned by it. The city reported its income from the sales of water, gas and electricity to its citizens and paid gross income tax thereon and thereafter filed its petition for refund of the gross income taxes so paid in the manner provided by statute. Refund was denied and suit filed to recover the amount of such taxes. The court said:

> "In Indiana it has long been recognized that the operation of public utilities by a municipality for service to its inhabitants constitutes a proprietary and not a governmental activity. *Aiken* v. *City of Columbus* (1906), 167 Ind. 139, 146, 147, 78 N. E. 657; (and many other cases) . . ."

This case further cited the case of *City of Logansport* v. *Public Service Comm.* (1931), 202 Ind. 523, 532, 177 N. E. 249, where the following language is used, at pages 531-2:

> "A city in the operation of an electric light utility, selling service to the public, acts in its private business capacity and not in its public governmental capacity . . . When a municipal corporation engages in an activity of a business nature rather than one of a governmental nature, such as the supply of light or water or the operation of a railroad, which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its sovereign capacity (citing authorities), and a city operates its municipally owned utility plant in its proprietary

capacity as a private enterprise subject to the same liabilities, limitations and regulations as any other public utility (citing authorities)."

In the case of *Klepinger* v. *Board of Com'rs of County of Miami* (1968), 143 Ind. App. 155, 239 N. E. 2d 160, Judge Smith thoroughly reviewed the law of proprietary functions versus governmental functions, setting out the history of the old rule of sovereign immunity, in that "the king can do no wrong" and discussed *Flowers* v. *Board of Commissioners of the County of Vanderburgh, et al.* (1960), 240 Ind. 668, 168 N. E. 2d 224, wherein it was determined that counties in Indiana are liable for torts occurring in the performance of proprietary functions. This case, however, was limited to tort law and that the general principle is that cities and counties should be treated alike. This was followed, in the *Klepinger* case, *supra,* by the further request to abrogate the principle of governmental immunity as it applies to all functions of cities and counties, whether the same be governmental or proprietary in nature.

The court then discussed in the *Klepinger* case, Kentucky and Florida cases which hold each state has the same rule abolishing governmental immunity as it applies to all functions performed by counties, whether the same be governmental or proprietary in nature. The court held that in determining the tort liability of a county or a city our courts could now ignore the governmental-proprietary distinction and render judgments and assess damages without regard to the policy limits of any insurance carried by the city or county.

In the case of *Robert Perkins, et al.* v. *State of Indiana* (1969), 252 Ind. 549, 251 N. E. 2d 30, an action was brought against the State of Indiana for injuries resulting when the appellants and family rented a cottage in a state park operated and owned by the State of Indiana. A lake and beach was under the care and control of the state and was used in connection with the cottage; appellants alleged a contamina-

tion of the water by raw sewage, which caused the appellants to become ill, with ensuing costs and damages to them.

The State of Indiana filed a motion to dismiss the action, contending that under our State Constitution, this State is immune to suits unless it consents thereto.

Judge Arterburn, in writing the opinion, discussed the common law in Indiana with reference to state or sovereign immunity. The state argued that liability is strictly limited to one of a contractual nature and appellants argued that the case grew out of a contract by reason of implied warranty and that there was a breach of an implied promise. This argument was discussed at great length by the writing judge and many cases cited and from which he determined the law to be as follows:

> "There may be some logical reason why a government should not be liable for its governmental actions and functions. We do not have that question before us and need not at this time give it further consideration, since the facts in this case show that the injurious act complained of in this case arose out of the proprietary function of the State of Indiana, namely, the furnishing of housing facilities in a state park. [Citing case.] It was a commercial project, supposedly operated in a business-like fashion. . . . We feel, to be consistent, the common law principle should be applicable to all governmental units alike."

The court then reversed the trial court, with directions to overrule the motion to dismiss and for further proceedings not inconsistent with the opinion.

Considering the above, we are of the opinion that the appellee was operating a proprietary business.

Appellee's contention that the categories "institutions, trusts, groups and bodies . . ." do include municipal corporations and are, therefore, exempt is untenable under the statute on which it relies, such statute being Burns' § 64-207, "Cities and towns-exemptions":

> "Every city and town in the state of Indiana shall be exempt from any and all taxes, either real or personal, on

properties or services and income therefrom, for any purpose whatsoever, on its public schools, public libraries, on its municipally-owned parks, golf courses, playgrounds, swimimng pools, hospitals, waterworks, electric utility, gas and heating plants, sewage treatment and disposal plants, cemeteries, auditoriums, gymnasiums, and any and all other municipally-owned property, utility or institution: *Provided, however, That this act [section] shall not exempt any city or town from the requirement to pay the tax upon its gross receipts under the gross income tax law.* [Acts 1939, ch. 15, § 1, p. 24.]" (Our emphasis.)

It is true that this statute relieves a city from paying taxes on city property devoted to utility service. However, this is not significant in determining whether income derived from the operation of a utility is subject to taxation under the gross income tax act which has a proviso as above stated "that this act [section] shall not exempt any city or town from the requirement to pay the tax upon its gross receipts under the gross income tax law."

As was stated by the court in *Department of Treasury* v. *City of Linton, supra:*

"The fact that the property devoted to utility service in Linton is not subject to real estate and property tax is not significant in our opinion. The Indiana Constitution (Article 10, Section 1) provides that property used for *municipal* purposes may be exempted by law. The furnishing of utility service to its inhabitants by appellee is a municipal purpose, in that municipalities are authorized by statute to carry on such activity. In 1939, the legislature saw fit to exempt certain municipal property, including 'waterworks, electric utility, gas and heating plants,' from property taxes (Acts of 1939, ch. 15, p. 24). That is the reason the utility properties here involved are free from property taxes. It is significant in this connection to note that this act of the legislature specifically provided 'that this act shall not exempt any city or town from the requirement to pay the tax upon its gross receipts under the Gross Income Tax Law.' "

We are of the opinion that had the General Assembly intended to include municipal corporations under said statute it would have done so. We are of the further opinion that had

the General Assembly intended an organization for civic purposes to have had the meaning insisted on by the appellee, it would have been so stated in Burns' Ind. Stat. § 64-2601, "Definition of terms", *supra*.

Appellee, in oral argument, contended that it was a proprietary function for the city to sell only a part of its electric generating and distribution system, but that a sale of the system in its entirety by the city was a governmental function for the reason that the governing body of the city made the sale of the entire utility.

This argument is untenable and we must disagree with the same for the reason that the common council of a city, under such a set of facts, which might sell a portion of an electric distribution system would be the same governing body which might sell the entire system and in fact there would be no distinction as it would be the same governing body conducting its business in the operation of a proprietary function owned and operated by it. It is elementary that the common council of a city which operates its own utility system is the governing body of the utility system as well as the governing body of the city.

Burns' Ind. Stat. § 64-2602 provides for the levying of the tax and reads as follows:

"64-2602. Levy of tax—Date.—There is hereby imposed a tax upon the receipt of gross income, measured by the amount or volume of gross income, and in the amount to be determined by the application of rates on such gross income as hereinafter provided. Such tax shall be levied upon the receipt of the entire gross income of all persons resident and/or domiciled in the state of Indiana, except as herein otherwise provided; and upon the receipt of gross income derived from activities or businesses or any other source within the state of Indiana, of all persons who are not residents of the state of Indiana, and shall be in addition to all other taxes now or hereafter imposed with respect to particular privileges, occupations, and/or activities. Said tax shall apply to, and shall be levied and collected upon, the receipt of all gross income received on or after the 1st day of May, 1933, with such exceptions and limitations as may

be hereinafter provided. [Acts 1933, ch. 50, § 2, p. 388; 1937, ch. 117, § 2, p. 604.]"

See, also, Burns' Ind. Stat. § 64-207, *supra.*

The trial court permitted evidence in the trial of this cause under Burns' Ind. Stat. § 54-203, "Valuation of assets—consideration—* * *" which provided that all public utilities valuations shall be based upon tangible property. It must be noted that this section of the statute does not pertain to sale, but pertains to the service, valuation, accounts and rates and is, in fact, a part of the statute under which the Public Service Commission is guided in making rates for public utilities.

We note that said statute provides, in part, as follows:

"* * * All public utility valuations shall be based upon tangible property, that is, such property as have value by reason of construction costs, either in materials purchased or in assembling of materials into structures by the labor or [of] workers and the services of superintendents, including engineers, legal and court costs, accounting systems and transportation costs, and also including insurance and interest charges on capital accounts during the construction period. As an element in determining value the commission may also take into account reproduction costs at current prices, less depreciation, based on the items set forth in the last sentence hereof and shall not include good will, going value, or natural resources."

This section of the statute is certainly distinguishable from the gross income tax statute covering the sale of tangible and intangible, real and personal property.

The gross income tax in this case is the tax on the sale of the utility property, real and personal, tangible and intangible, and the tax is assesesd on the gross, or whole amount, of the sale. This is pursuant to Burns' Ind. Stat. § 64-2601(m), as follows:

"(m) The term 'gross income,' except as hereinafter otherwise expressly provided, means the gross receipts of the taxpayer received as compensation for personal services, including but not in limitation thereof, wages, bonuses,

salaries, fees, commissions, gratuities (including the value of living expenses and/or rental of quarters furnished to the taxpayer) and the gross receipts of the taxpayer received from trades, businesses, or commerce, including admission fees or charges, and the gross receipts received from the *sale, transfer, or exchange, of property, tangible or intangible, real or personal, including the sale of capital assets, or from the assignment or sale of rights,* all receipts received from the performance of contracts, all receipts received as prizes and premiums, all receipts received from insurance, all amounts received as alimony, damages, or judgments, and all receipts received by reason of the investment of capital, including but not in limitation thereof, interest, discounts, rentals, royalties, dividends, fees, commissions, and receipts received from the surrender, sale, transfer, exchange, redemption of, or distribution upon, stock of corporations or associations, and all other receipts of any kind or character received from any source whatsoever, and without any deductions on account of the return of capital invested, the cost of the property sold, the cost of materials used, labor cost, interest, discount, or commissions paid or credited, or any other expense whatsoever paid or credited, and without any deductions on account of losses, and without any other deductions of any kind or character: * * *" (Our emphasis.)

The trial court was not, and this court is not, required to consider anything but the amount of the gross sale price of the property and deductions to which the appellee was entitled in the year of the sale. Burns' Ind. Stat. § 64-2605—Deductions, establishes annual deductions of $1,000 per day for each taxpayer or a proportionate part of the deduction for a proportionate part of the year. It is our opinion that a tax amounting to one and one-half per cent (1½%) of the gross sale, less the statutory deductions was due and owing to the Gross Income Tax Division of the Indiana Department of State Revenue as gross tax liability of the appellee for the year 1961, the same being the year of the sale, pursuant to Burns' Ind. Stat. § 64-2601, *et seq.*

. The judgment of the trial court is reversed with instructions to enter a judgment that the plaintiff take nothing by its complaint.

Costs versus appellee.

Carson, Cooper and Sullivan, JJ., concur.

NOTE.—Reported in 252 N. E. 2d 259.