**SCOTT, Plaintiff-Appellant, v CISMADI, ET AL., Defendants-Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 6720.   Decided March 24th, 1947.

Fred L. Hoffman, Cincinnati, for plaintiff-appellant.

Robert G. McIntosh, Cincinnati, Chester S. Durr, Cincinnati, and Peter J. McCarthy, Jr., Cincinnati, for defendants-appellees.

## OPINION

By ROSS, J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County. A motion for an instructed verdict in favor of the defendant, Anna Cismadi, Administratrix of the Estate of Tony Cismadi, was sustained at the close of the plaintiff's opening statement. The trial resulted in a verdict for the other defendants, Frank H. Cismadi and Anna Cismadi. Judgment was entered accordingly.

The plaintiff alleges in her amended petition that the defendant Frank H. Cismadi on the 17th of November, 1944, at about 9 P. M., so negligently operated an automobile that it struck the plaintiff as she was attempting to cross from the southwest corner of Madison Road and Woodburn Avenue to the northwest corner of such intersection; that she was on a cross-walk when she was so struck and had started to cross Madison Road upon a green light; that she slipped and fell, and before she could reach the northwest corner of the intersection the light changed to red against her.

She further charges that the injuries which she received by being so struck were the proximate result of the negligence of Frank Cismadi, in that he operated such vehicle without having it under proper control, at a speed of 20 miles per hour, which was greater than would permit him to stop in the assured clear-distance ahead, and which was a menace to the life and limb of the plaintiff, that he failed to yield the right of way to plaintiff upon such cross-walk, that he failed to use ordinary care in the operation of such vehicle and that he "drove his car into this plaintiff, who was upon the cross-walk, after he saw or should have seen her in the exercise of ordinary care;"

that he failed to keep a proper lookout and in the operation of such vehicle at such time and place violated the provisions of four ordinances of the City of Cincinnati, containing provisions applicable to reckless driving, speed, right of way of pedestrians, passing vehicles stopped on cross walk.

Plaintiff further alleges that such vehicle was owned by one Tony Cismadi and that such vehicle "was so operated as set forth above with the authority of said defendant Tony Cismadi. That said Tony Cismadi has since deceased and that Anna Cismadi is his duly appointed and qualified administratrix. Plaintiff further alleges an ordinance of the City of Cincinnati providing that "The violation of any section or provision of the Traffic Code by means of a motor vehicle shall be prima facie evidence that such violation was committed by or with the authority or permission of the owner of such vehicle. Plaintiff further alleges that Anna Cismadi signed the application of the defendant Frank Cismadi for an operator's license, who was then 16 years of age, and that his negligence is, therefore imputed to her.

Frank H. Cismadi in his answer filed a general denial, and alleged that the plaintiff, without warning of any kind, jumped from or in front of a car moving parallel to him, into and against the front part of his automobile. This, the plaintiff denied. Anna Cismadi in her personal and representative capacities filed general denials.

From the evidence it appears that the plaintiff left the curb at the southwest corner of Madison Road and Woodburn Avenue in the City of Cincinnati and started to cross Madison Road upon or near a cross-walk, when the green light was in her favor, that she slipped and fell during the crossing and before she could reach the northwest corner of such streets, she was struck by or ran into the automobile driven by Frank H. Cismadi, who had stopped his automobile on the east side of Woodburn Avenue and started westwardly across Madison Road upon the green light turning in his favor. Another automobile immediately south of his vehicle on Madison Road was also waiting for the light. Both vehicles started forward when the light changed to green, the south car slightly in advance of that driven by Cismadi. The operator of the other car only avoided striking the plaintiff by suddenly swerving his vehicle, after warning from a passenger riding with him, and the plaintiff then sprang into the path of that driven by Cismadi, and ran into it or was struck by it.

The plaintiff attached two interrogatories to her petition, which were answered by Frank H. Cismadi:

(1) "Where was the plaintiff when you first saw her?" Answer. "When I first saw Dorothy Scott she was jumping from or in front of an automobile proceeding west in the west-bound traffic lane next to the center line of Victory Parkway (Madison Road) at or near the intersection of Victory Parkway and Woodburn Avenue into and against the front part of my automobile which I was driving west in the second west bound traffic lane on Victory Parkway."

(2) "Did you yield the right of way to the plaintiff?" Answer: "Dorothy Scott did not have the right of way."

The evidence was in conflict upon the issues thus presented. There was substantial evidence sustaining the verdicts in favor of defendants.

The plaintiff presents eight assignments of error. These are disposed of as follows:

(1) The first deals with the instructed verdict in favor of Anna Cismadi as administratrix of the estate of Tony Cismadi, deceased, and is based upon the fact the decedent owned the automobile causing plaintiff's injuries, the authority given Frank H. Cismadi to drive it, and the ordinance quoted in plaintiff's petition.

The trial court committed no error, prejudicial to plaintiff in so instructing a verdict for the administratrix.

(2) The plaintiff claims the trial court committed error in refusing to submit to the jury nine interrogatories which were in writing and separately tendered by the plaintiff.

The interrogatories so considered are as follows:

(a) "Did the plaintiff start across Madison Road on a green light?"

(b) "Did the plaintiff start to cross Madison Road before the defendant Frank Cismadi entered the intersection?"

(c) "Did the light change while the plaintiff was crossing Madison Road?"

(d) "Did the defendant Frank Cismadi ascertain whether there were any pedestrians on the cross-walk before driving his car into the intersection?"

(e) "Did the defendant Frank H. Cismadi as he drove west on Madison Road at the time and place in question keep a proper lookout for pedestrians using Madison Road?"

(f) "Did the defendant Frank H. Cismadi yield the right of way to the plaintiff?"

(g)  "Did the defendant Frank H. Cismadi blow his horn or give any warning signal to the plaintiff?"

(h).  "Was the defendant Frank H. Cismadi operating his automobile with due regard for the safety and rights of pedestrians at the time it struck the plaintiff?"

(i)  "Was the plaintiff injured as the result of being struck by an automobile the defendant Frank Cismadi was operating?"

Sec. 11420-17, GC, provides:

"When either party requests it, the court shall instruct the jurors, if they render a general verdict, specially to find upon particular questions of fact to be stated in writing, and shall direct a written finding thereon.  The verdict and finding must be entered on the journal and filed with the clerk."

Sec. 11420-18, GC, provides:

"When a special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court may give judgment accordingly."

It is often not possible for a party in one interrogatory to require an answer which will dispose of all or even one of the issues presented.  On the contrary, "each interrogatory submitted to a jury for answer should be limited to a single direct and controverted issue of fact and should be so stated that the answer will necessarily be positive, direct, and intelligible."  **Elio v Akron Transportation Co., 147 Oh St 363.**

For instance, the answer to an interrogatory may show negligence, but not that such negligence is the proximate cause of injury.  An interrogatory may even be directed to specific acts of negligence.  **Masters v New York Central Railroad, 147 Oh St 293, 298.  Davison v Flowers, 123 Oh St 89.**

It is not necessary that an interrogatory require an answer containing an ultimate fact, if the answer required will establish a probative fact from which such ultimate fact as a matter of law must be inferred.  **39 O. Jur. 1160.**

The third paragraph of the syllabus in **Gale v Priddy, 66 Oh St 400**, is:

"The trial court should exercise with great deliberation and caution the power of withdrawing or refusing to submit questions propounded; and although the questions must be

such that the answers thereto will establish ultimate and determinative, facts, and not such as are only of a probative character; yet questions the answers to which establish probative facts from which an ultimate material fact may be inferred as a matter of law, should be allowed. **Schweinfurth, Admr., etc. v Railway Co., 60 Oh St 215,** explained and qualified. **The Cleveland & Elyria Electric R. R. Co. v Hawkins, 64 Oh St 391,** approved and followed."

And, again, in the second paragraph of the syllabus in **Mellon, Dir. Genl., etc. v Weber, 115 Oh St 91,** it is stated:

"Sec. 11463, GC, requiring the court, on the request of either party, to instruct the jurors, if they render a general verdict, specially to find upon particular questions of fact stated in writing, and to render written findings thereon, is mandatory in character, provided such questions require answers which establish probative facts from which an ultimate material fact may be inferred as a matter of law. A refusal to submit such an interrogatory to the jury, when properly requested, for an answer thereto in the event a general verdict is rendered, is prejudicial error."

The general purpose of interrogatories is well stated in the syllabus in **Cleveland & Elyria Electric Rd. Co. v Hawkins, 64 Oh St 391:**

"The purpose of Section 5201 of the Revised Statutes is to elicit from the jury such special findings of fact as will test the correctness of the general verdict, if a general verdict is returned; and it requires the court, upon request, to direct answers to be returned to such questions, stated in writing, as will elicit from the jury a finding of any fact whose legal effect may be, when considered with other facts admitted or to be found, to show whether or not the general verdict results from an erroneous application of the law; but it does not require the submission to the jury of questions whose purpose is only to ascertain the mental processes by which the jury may arrive at conclusions of fact."

The problem then presented by this assignment of error is whether any one or all of the interrogatories refused by the trial court required answers which would have established the absence or existence of (1) ultimate facts affecting the issues involved; (2) probative facts from which the absence or existence of relevant ultimate facts must be as a matter of law

inferred, and (3) which in the aggregate or with 'facts admitted or to be found will show whether or not the general verdict results from an erroneous application of the law.

It is not always easy to determine what are ultimate and what are probative facts, and some attention to the attempts of courts to define these terms is required.

Ultimate facts lie in the area between evidence and a conclusion of law. They are the essential and determining facts on which the final conclusion of law is predicated. They are deduced by inference from evidentiary facts, which can be directly established by testimony or evidence.

Ultimate facts are those facts which may be pleaded establishing the existence of a legal right, the violation of a legal right, or a legal defense to a cause of action based thereon. Ultimate facts are the logical results of the proofs or evidence. They are conclusions of facts, the final resulting effect which is reached by the processes of logical reasoning from evidentiary facts. An ultimate fact may be and often is the result of an inference drawn from more than one evidentiary fact.

See, Words and Phrases, Vol. 34, Permanent Edition, page 6, et seq.

Coming now to examine the interrogatories in detail, it is impossible to tell from the general verdict whether the jury found the defendant Frank H. Cismadi free of negligence, that he was guilty of negligence, but that such negligence was not the proximate cause of the plaintiff's injuries, or that the plaintiff was guilty of contributory negligence, which was the proximate cause or a contributing cause of her injuries.

Let it be supposed that the jury found, in answer to the interrogatories submitted, that the plaintiff started across Madison Road on a green light (as far as any interrogatory is concerned, she may have attempted to do so in the middle of the block) before the defendant entered the intersection, and the light changed while plaintiff was crossing Madison Road (where?) and that the defendant did not ascertain whether there were any pedestrians on the cross-walk (which cross-walk is not stated) before driving his car into the intersection, and that he did not keep a proper lookout for pedestrians using Madison Road (on cross-walks or wandering about the street or on the sidewalk?) and that he did not yield the right of way to plaintiff (where) and that he was not operating his automobile with due regard for the safety and rights of pedestrians (which would call for a conclusion of law as well as fact) and that plaintiff was struck by the automobile operated

by the defendant, would the trial court have been bound to enter judgment against the verdict? And if not, what purpose could the interrogatories serve except to give the plaintiff information as to the jury's conclusion upon certain details of the proof.

All of the interrogatories were properly refused, and especially those which called for conclusions of law or mixed conclusions of law and fact. **Mason Tire & Rubber Co. v Lansinger, 108 Oh St 377, 382.**

As stated hereinbefore, a party is not required to and should not attempt to cover all the issues in one interrogatory, but it is obviously necessary that the interrogatories submitted must either separately or in the aggregate require answers from the jury which, upon examination, if found favorable to the proponent and contrary to the verdict will permit the court thus to test the verdict and comply with the provisions of §11420-18, GC.

All of the interrogatories, giving them the most liberal construction, if answered in favor of the plaintiff, would not have presented a situation calling for the application of §11420-18, GC. Such being the case, they could serve no lawful purpose. They could only furnish a basis for concluding that the jury in its mental processes gave evidence to certain evidence and refused it to other evidence. This is not a purpose justifying the submission of interrogatories recognized by law. See, **Cleveland & Elyria Electric Rd. Co. v Hawkins, 64 Oh St 391, supra.**

(3) It is claimed the trial court committed error in the general charge.

(a) Failing to state the issues to the jury.

The record fails to sustain this contention of the plaintiff.

(b) Failing to charge upon specific matters requested by plaintiff.

There was in response to the request of the court for suggestions from counsel only the statement of plaintiff that: "The only thing the plaintiff wishes to call attention to charge on the matters contained in the special charges which the plaintiff presented to the court and the court refused."

No error, prejudicial to plaintiff, appears in the failure of the court to further charge upon such a request.

(c) No error, prejudicial to plaintiff appears in the charge on contributory negligence, considering all the law on this subject given the jury.

(d) No error appears, prejudicial to plaintiff, upon the charge upon the assured clear distance ahead rule, considering all the law given the jury.

(e) No error, prejudicial to the plaintiff, appears in the entire charge of the court, both general and special, upon the subject of traffic lights.

(4) The Court committed no error, prejudicial to the plaintiff, in refusing the special charges tendered by plaintiff.

(5) The Court committed no error, prejudicial to the plaintiff, in giving the charges submitted by the defendant.

(6,7) No error, prejudicial to the plaintiff, appears in the action of the trial court considered in these assignments of error, involving the weight of the evidence and motion for new trial.

(8) No error, prejudicial to plaintiff, appears in the record.

The judgment is affirmed.

MATTHEWS, PJ, ROSS and HILDEBRANDT, JJ, concur in Syllabus, Opinion and Judgment.