## Block *v.* Fruehauf Trailer Div., Fruehauf Corp.

[No. 269A24. Filed December 4, 1969. Rehearing denied January 21, 1970.]

*Glen J. Beams, R. David Boyer* and *Helmke, Philips & Beams,* of counsel, of Fort Wayne, for appellant.

*William L. Wilks, Hunt, Suedhoff & Wilks,* of Fort Wayne, for appellee.

Hoffman, J.—We are here concerned with the review of a negative award of the Industrial Board of Indiana. The Industrial Board, in denying compensation to the claimant-appellant, made the following findings:

"That on the 18th day of January, 1968, plaintiff was in the employ of the defendant at an average weekly wage in excess of $85.00; that on said date he sustained personal injury by reason of an accident arising in the course of his employment, but not arising out of his employment; that at the time of said accidental injury the plaintiff and one of his co-employees were involved in horse play; that as a result of his said accidental injury plaintiff became temporarily totally disabled, and is so temporarily totally disabled at this time."

This finding was based on the following facts:

The evidence most favorable to the appellee established that appellant worked for appellee as a layout man. On the date of the accident in question, appellant was standing at his workbench which was located some 45-feet north of an overhead door. There was an aisle leading directly to the door from appellant's bench. Another employee of appellee approached the appellant from the rear, opened his apron strings causing the strings to loosen and his apron to fall down, and then ran in a southerly direction, down the aisle toward the door. A number of witnesses testified that appellant gave chase, during the course of which he threw his gloves at the "prankster." At the end of the aisle, appellant lost his balance while attempting to turn the corner, pitched forward and struck his neck on the overhead door. As a result of the accident, the sixth or seventh vertebra in appellant's neck was broken and dislocated forward causing a partial paralysis.

Appellant applied to the Industrial Board for compensation on April 3, 1968. Appellee, in its first paragraph of answer, denied liability, and in its second paragraph of answer alleged the appellant's injuries resulted from his participation in "horseplay," and, therefore, did not arise out of or occur in the course of his employment.

A hearing was held before Industrial Board Member Joseph P. Miller, following which a finding was entered for appellee. Appellant then filed his application for review by the Full Board. Following the hearing before the Full Board, the findings set out above were entered and this review followed.

The findings made are sufficient and are the only findings required by the Act.[1]

Appellant assigned as error 1) that the award is contrary to law; and 2) that the Industrial Board erred in denying appellant's motion to strike appelleee's second paragraph of answer.

Specifically, appellant alleges that the award is contrary to law for the following reasons:

1. "Regardless of whether horseplay is found to have occurred, Indiana cases have held that horseplay on the premises where work is performed is the natural condition of employment and therefore an injury to a non-instigating employee arises out of the employment."

2. "Defendant has wholly failed to plead and prove a wilful violation of a Rule by Plaintiff as a ground for denial of compensation to Appellant and the Award is erroneously based on a defense which has been waived by reason by [of] such failure."

Next, appellant alleges that the Industrial Board erred in denying appellant's motion to strike appellee's second paragraph of answer for the following reasons:

1. "An employer can raise the defense of wilful rule violation only by properly pleading the existence of rule violated and the conduct of the employee in violation thereof."

2. "Appellee by failing to file his special defense more than twenty-one days prior to hearing waived the defense."

We shall first consider the Board's ruling on the motion to strike. We cannot agree with appellant's theory that "horseplay" could only have been raised as a special defense. The fact is that the burden is on the claimant to establish that the accident arose out of and in the course of his employment. See: *Tom Joyce 7 Up Company v. Layman,* 112 Ind. App. 369, 375, 44 N. E. 2d 998 (1942). In making an

---

1. Acts 1929, ch. 172, § 2, p. 536, as last amended by Acts 1963, ch. 387, § 1, p. 1025, Burns Ind. Stat., Anno. § 40-1202.

award, the Industrial Board has the obligation to determine that the claimant has sustained his burden of proving that an *accident* occurred *in the course of and arising out of* his employment. A failure of proof on any one of these elements compels a negative finding by the Board.

The inference arises from the finding of the Board that appellant did not sustain his burden of proving that the accident arose out of his employment for the reason that appellant was engaged in "horseplay" at the time of the accident. This brings us to the question raised by appellant's first assignment of error: Did the Industrial Board erroneously apply the legal criteria in arriving at the ultimate fact conclusion, that appellant was engaged in "horseplay" at the time of the accident?

We are not at liberty to weigh the evidence. *Achenbach* v. *Review Bd. of Ind. Emp. Sec. Div.*, 242 Ind. 655, 660, 179 N.E. 2d 873 (1962); *Bootz Mfg. Co.* v. *Review Bd. of Ind. Emp. Sec. Div.*, 237 N.E. 2d 597, 601, 143 Ind. App. 17, (1968), (Transfer denied). Thus, we are only here concerned with appellant's definition of "horseplay."

We agree with appellant's definition, above, as far as it goes, but it does not go far enough. It is certainly true that one who is the innocent victim of another's prank may be compensated. *In re Loper*, 64 Ind. App. 571, 574, 116 N.E. 324, (1917); *Western Union Tel. Co.* v. *Owens*, 82 Ind. App. 474, 146 N.E. 427 (1925).

It is also true that where the employer has acquiesced in the particular conduct, or "horseplay", that the employee may be compensated. *Kokomo, etc. Wire Co.* v. *Irick*, 80 Ind. App. 610, 141 N.E. 796 (1923); *Kunkel, Trustee, etc.* v. *Arnold*, 131 Ind. App. 219, 234, 158 N.E. 2d 660 (1960), (Transfer denied). As a corollary to this approach, our courts have held that where "horseplay" may be expected to occur because of the type of activity the employee is engaged in, *i.e.*, air hose "gooses", then the employee may be compensated.

However, this court has never gone so far as to say that where the "horseplay" was not acquiesced in by the employer, not a natural condition of the employment, and where, in fact, the employee participated in the "horseplay", and was not, therefore, an innocent victim, that the employee should be compensated. To the contrary, we have consistently *denied* compensation in such cases for the reason that such activity does not *arise out of* the employment.

In *Western Union Tel. Co.* v. *Owens, supra,* this court specifically distinguished the situation where an employer might anticipate "horseplay" and make appropriate rules to govern such conduct, and the situation where, as in the instant case, there is no connection between the employment and the conduct.

Appellant has pointed out that we are to give liberal construction to the Workmen's Compensation Act. The limits of liberality have already been reached in the "horseplay" analysis. Once the connection between the employment and the "horseplay" conduct becomes so tenuous that there is no apparent causal factor, to permit compensation would be to disregard even the most liberal boundaries of the limitation, "arising out of and in the course of the employment."

There was no error in the award of the Industrial Board, and the award, therefore, must be affirmed.

Award of the Full Industrial Board of Indiana affirmed.

Lowdermilk, P.J., Carson and Cooper, JJ., concur. Sharp, J. concurs in result.

White, J., dissents with opinion, in which dissent Pfaff, C.J., concurs in result.

Sullivan, J., dissents with opinion.

### DISSENTING OPINION

WHITE, J.—It appears that the appellant, the appellee, and a majority of the court accept the findings made by the Full Industrial Board of Indiana as sufficient to enable us to decide

whether the award based thereon is, or is not, contrary to law. I believe the findings are wholly inadequate for that purpose. But before stating why I believe the findings made by the full board are inadequate to permit a review of the award by this court, I feel it would be helpful to consider what the law is, or should be, concerning horseplay in workmen's compensation cases.

The Board's conclusion that appellant's accident did not arise out of his employment appears to be premised on the finding "that at the time of the said accidental injury the plaintiff and one of his co-employees were involved in horse play". Appellant accepts that finding as being supported by the evidence but contends that "horseplay is a condition of employment and therefore a mere finding of horseplay does not support a conclusion that injury did not arise out of the employment."

In his contention that horseplay is a condition of employment appellant is correct. We so held in *Chicago, etc., Ry. Co.* v. *Clendennin,* 81 Ind. App. 323, 326, 143 N.E. 303 (1924). There the injured employee was a car inspector employed by the appellant railroad. In pursuit of his duties he went onto the premises of a stone-mill where, while inspecting a car for his employer, he was injured by a rock thrown onto the car by an employee of the stone-mill. It was thrown in a spirit of sport, merely to scare him, but it rolled off of the car and struck him. No such act of sport had previously been indulged in at the mill.

Of the contention that the accident did not arise out of the employment, the opinion states, in part:

"It is a matter of common knowledge to employers of labor that men working together, or in near proximity to other workers, will indulge in moments of diversion from work to play pranks on each other; . . . , whether such workers are coemployees or not, the risk from accident is thereby, to some extent at least, necessarily increased, and this increased risk is a risk of the employment. * * * [Citations only, are here omitted.] Authorities to the contrary are

found in some jurisdictions, but, to follow them would be to violate the rule requiring a liberal construction of the statute in favor of the employee."

One of the citations I have omitted from the above quotation is *Verschleiser* v. *Joseph Stern Son, Inc.*, 229 N.Y. 192, 128 N.E. 126, 128 (1920), in which the facts bear more than a superficial similarity to what may well have been the facts in the case at bar.[1] There the injured employee was a worker in an abattoir. While he stood waiting to have his hand truck loaded, someone behind him dropped a piece of animal flesh around his neck.

> "The claimant resented the insult and assault upon him, and, in his excitement, believing the attack to have been made by Dudler [a fellow employee], went over to him and struck him several times with the piece of flesh, and then threw it down. Dudler thereupon kicked the claimant causing the injuries complained of." (128 N.E. at 127.)

There was evidence that someone other than Dudler had started "the melee", but neither the Industrial Commission nor the court thought that fact to be important, since, in any event, the claimant was not the instigator. There was evidence, however, of prior annoyance of claimant by Dudler. In upholding the Industrial Commission's award of compensation, New York's highest court said (128 N.E. at 128):

> "The Workmen's Compensation Law (Consol. Laws, c 67) should be construed broadly. Compensation under it does not depend on any fault of the master or any negligence of the servant. The law was enacted to do away with the defenses which had governed the law of master and servant. The question in each case arising under the Workmen's Compensation Law is, 'Was the injury received while engaged in the master's business?' If the servant had left

---

1. As later discussion will disclose, only a few facts emerge undisputed from the testimony, in the case at bar, and the latitude of reasonable inference is quite wide. Since only the Industrial Board can find the facts, references herein to fact situations are limited to what *may* be the facts of this case. *Cole* v. *Sheehan Const. Co.*, 222 Ind. 274, 280, 53 N. E. 2d 172 (1944).

his employment and was willfully pursuing designs of his own, he would not be entitled to compensation. The man who initiates an assault is doing a willful thing, but this cannot be said of the man who, surprised by physical assault or insult, reacts and in self-protection strikes another. His act is as involuntary as that of closing the eye to avoid dust, the same action and reaction which the law recognizes in its definition of manslaughter.

\* \* \*

"In the instant case the injury was the result of provocation and passion engendered between employes in the course of their employment on the premises of the employer while engaged in their daily work. *McIntyre* v. *Rodgers,* 41 Scot. L. Rep. 107; *Pekin Cooperage Co.* v. *Industrial Commission,* 285 Ill. 31, 120 N. E. 530.

"Under the circumstances of the instant case a workman at work for his master, who sustains injury because of his environment, is entitled to recover. This right to recover is not nullified by the fact that his injury is augmented by natural human reactions to the danger or injury threatened or done.

\* \* \*

"It may seem harsh and arbitrary to impose liability upon a master for an assault committed by a workman upon a coworkman, but the purpose and intent of the statute is to fix an arbitrary liability in the greater public interest involved. This legislation was to ameliorate a social condition—not to define a situation or fix a liability by an adherence to the old common law. Liability was imposed regardless of fault—vitally different from that under the common law. Injury by an employe moved by some cause aside from his regular duties may be considered an inevitable, however undesirable, result—a risk which is incident to the employment of many persons. It is a burden which industry may well bear under this legislation."

It will be noted that the New York opinion above quoted recognized that an employee who "had left his employment and was willfully pursuing designs of his own . . . would not be entitled to compensation." Or as Judge Cardozo expresses it in *Leonbruno* v. *Champlain Silk Mills,* 229 N. Y. 470, 128 N. E. 711, (1920): "This case is not within the principle

of . . . [citing cases] where the claimant, joining in the horseplay, had stepped aside from the employment."

It has been the policy in Indiana to deny compensation to any employee injured by a fight in which he is the aggressor and to any employee injured by horseplay which he invites or in which he voluntarily participates.[2] A good case may be made for the suggestion that industry should bear the economic burden of all injuries (except perhaps willfully-self-inflicted injuries) suffered by employees while at work. Such a result would undoubtedly follow if the legislature should eliminate from the definition of "injury" the words "arising out of and," leaving it to read, "injury by accident in the course of the employment."[3] For this court to hold that an employee whose injury arises out of a hazard he himself has created by stepping aside from his employment to join in horseplay would establish a principle which, if carried to its logical conclusion, would mean the virtual elimination of the requirement that injuries, to be compensable, must arise out of the employment. Both the doctrine of *stare decisis*[4]

---

2. See Dean Small's discussion and the cases and authorities he cites in his volume, WORKMENS COMPENSATION LAW OF INDIANA § 6, 9, P. 136.

It may well be that an employee who steps aside from his employment by joining in horseplay which subsequently injures him has left the course of his employment and, therefore, is injured by an accident not occurring in the course of his employment. But it is equally true that such an accident arises out of the employee's willful pursuit of a design of his own and, therefore, not out of his employment. The language of the Indiana opinions involving horseplay (and physical altercations which cause injuries to employees on the employer's premises during working hours) has indicated concern only with the question of whether the accident arose out of the employment. Speaking of the concept "in the course of the employment," Dean Small says: "The principal emphasis is upon the time element, so that in the course of employment might be said to mean *during* the employment."

3. Burns Ind. Stat. Ann. § 40-1701(d). Other sections, such as § 40-1208 which excludes injuries due to specified causes, would also require amendment in order to accomplish such all-inclusive coverage.

4. *Moore-Manfield, etc. Co.* v. *Indianapolis, etc. R. Co.*, 179 Ind. 356, 101 N. E. 296, (1913); *Todd et al.* v. *Ehresman et al.*, 132 Ind. App. 440, 175 N. E. 2d 425, (1961); *Washington et al.* v. *Chrysler Corp. et al.*, 137 Ind. App. 482, 200 N. E. 2d 883, (1964).

and the doctrine of separation of powers[5] demand that courts refrain from exercising that legislative function.

I would hold, therefore, that if it is found that the appellant was injured by an accident arising out of horseplay in which he did not voluntarily participate, his accident and injury arose out of his employment and he is entitled to compensation. If, however, he voluntarily participated in the horseplay which injured him, his accident and injury did not arise out of his employment and he cannot recover. Which, if either, is here the case cannot be determined from the Board's "findings." The only specific finding made by the Board in this regard is "that at the time of the said accidental injury the plaintiff and one of his co-employees were involved in horseplay." This fails to say whether the horseplay was the cause of the injury and whether appellant's involvement was voluntary.[6] The victim of any prank, such as the victim of the air hosing in *In re Loper,* 64 Ind. App. 571, 116 N. E. 324 (1917), discussed *infra,* or the victim of the rock tossing in *Chicago etc. Ry. Co.* v. *Clendennin, supra,* (81 Ind. App. 323, 143 N. E. 303), could well have been said to have been "involved" in horseplay.

---

5. *Denton* v. *State,* 246 Ind. 155, 203 N. E. 2d 539, (1965); see, also, *State* v. *Morgan Superior Court,* 249 Ind. 220, 231 N. E. 2d 516, (1967).

6. It does not necessarily follow that because an employee is participating in horseplay *when* he is injured that the horseplay had anything to do with causing the injury. Suppose, for instance, that while an employee is playing a prank on another employee, such as untying the other's apron strings, a boiler explodes injuring all the workmen in the room, including the prankster, the victim of the prank, and the other employees in the room who are performing their duties unaware of the horseplay then in progress. No one would deny that, as to all these injured employees, the injury arose out of the employment and all would be entitled to compensation.

Furthermore, it is here obvious that appellant was not injured by the direct application of force to his body by the prankster. It was appellant's response to the prank which injured him. The prank was obviously horseplay, but what was the response? Was it produced by an uncontrollable rage and thus involuntary; was it a calculated purposive attempt to retaliate; was it an attempt to become the aggressor in a fight; or was it merely an attempt to join in the fun (i.e., to voluntarily participate in the horseplay)?

The full Industrial Board has made an award but has failed to file with it "the finding of the facts on which it is based," as required by section 60 of "The Indiana Workmen's Compensation Act of 1929,"[7] being Ind. Acts 1929, Ch. 172, § 60, p. 536 also Burns IND. STAT. ANN. § 40-1511. More precisely, perhaps, "the finding of the facts," is insufficient to sustain the award. In suggesting that we should so hold, I am fully aware of the history of this court's vacillation on the question of whether the "finding" that an employee "sustained injury by reason of an accident . . ." constitutes a finding of fact or a conclusion of law.

The first Indiana horseplay opinion is *In re Loper, supra,* (64 Ind. App. 571, 116 N. E. 324 [1917]) which is an answer to a "question of law" certified by the Industrial Board to the Appellate Court pursuant to what is now a clause of § 61 of the present Act (Burns IND. STAT. ANN. § 40-1512).[8] The "question of law" was: "Upon the foregoing facts, did the injury and death of the employee arise out of his employment within the meaning of the Indiana Workmen's Compensation Act?" By answering that question the court tacitly acknowledged that it was a "question of law" and that its answer was a conclusion of law. The answer was "that *under the facts the* injury and death involved arose out of the employment . . . ." (Emphasis added; 64 Ind. App. at 581.) In *Inland Steel Co.* v. *Lambert,* 66 Ind. App. 246, 250, 118 N. E. 162 (1917), we expressly held such a statement to be a conclusion of law. Speaking through the same Judge Caldwell, who wrote in *In re Loper,* we there said:

---

7. The Act is so named by its section 1, which is Burns Ind. Stat. Ann. § 40-1201.

My contention that the "finding" made by the full board is not "the finding of the facts on which it [the award] is based" (as required by § 60 [Burns § 40-1511]) is most convincingly supported, it seems to me, by the majority opinion's statement immediately following a recital of the full board's finding: "This finding was based on the following facts: . . . ." It was necessary for this court to find the facts before it could decide whether the award is contrary to law.

8. "The board, of its own motion, may certify questions of law to said Appellate Court for its decision and determination."

"Section 59 of the act provides that in each proceeding before it, the board shall make and file a statement of the facts. We are first required to determine whether under the finding it appears that appellee received his injury 'by an accident arising out of and in the course of the employment.' It will be observed that the statement of facts includes a finding that such was the origin of the injury. However, a statement of facts should consist of ultimate facts, and should not include either evidentiary facts or conclusions of law. To determine that a certain injury was the result of an accident, or that it arose out of or in the course of the employment, or that it was or was not due to the wilful misconduct of the person involved, as those terms are used in the act, requires that certain fixed legal principles be applied to the ultimate facts of the particular case. It follows that such an inquiry involves a law question, and therefore that the result of such inquiry, as that the accident did or did not arise out of, or in the course of, the employment, or whether it was due to wilful misconduct, is a legal conclusion rather than an ultimate fact. *Lagler* v. *Rock* (1914), 57 Ind. App. 79, 104 N. E. 111; *In re Mathewson* (1917), (Mass.) 116 N. E. 831; *Dietzen Co.* v. *Industrial Board* (1917), 279 Ill. 11, 116 N. E. 684.

"However, since it is within the province of the board to determine in the first instance whether an injury involved in the proceeding before it was the result of an accident, and whether it arose out of, and in the course of, the employment, it is proper for the board to include in its finding its general conclusions respecting such matters.

"Such conclusions, however, are reviewable by this court, and when so reviewed, they are binding on this court only when justified by the ultimate facts which must be included in the finding in order that such legal conclusions may be sustained. It follows that we cannot consider such conclusions of law in determining whether under the ultimate facts the injury here was the result of an accident, and whether it arose out of, and in the course of, the employment as those terms are used in the act."

Fully cognizant of the express overruling of that holding by *Empire Health, etc. Ins. Co.* v. *Purcell,* 76 Ind. App. 551, 132 N. E. 664 (1921), I would, nevertheless, now adopt the foregoing quotation as expressing a correct statement of the

law and would expressly overrule *Empire Health* and all subsequent opinions which follow its holding, insofar as they conflict with this opinion.

In suggesting that we return to the rule of *Inland Steel* v. *Lambert, supra,* after a half-century of operating under the contrary rule of *Empire Health* v. *Purcell, supra,*[9] I am motivated by three factors. First, I believe that *Carlton* v. *Board of Zoning Appeals,* 252 Ind. 56, 245 N. E. 2d 337, 16 Ind. Dec. 704 (1969), requires it.[10] Secondly, the conflicts in the evi-

9. I concede the accuracy of the statement in *Dormeyer Industries* v. *Review Board,* 133 Ind. App. 500, 508, 183 N. E. 2d 351 (1962), that since *Empire Health* "it has been consistently held that such finding [i.e., 'arising out of and in the course of his employment'] was one of ultimate fact and not a legal conclusion".

10. *Carlton* involves the failure of a Board of Zoning Appeals to make special findings of fact to support its grant of a land use variance. Industrial Board decisions are not mentioned, but the Supreme Court's intent that the rule of the case should apply to all administrative adjudications is clearly expressed, as follows (245 N. E. 2d at 343):

"In the case of *Wabash Valley Coach Co.* v. *Arrow Coach Lines, Inc.* (1950), 228 Ind. 609, 94 N. E. 2d 753, we said:

'The finding that a certificate of public convenience and necessity should be granted is simply a conclusion from all the evidence without any special finding of fact upon which the conclusion can be reached. The Public Service Commission should find the ultimate facts specifically and not generally. The findings of fact must be specific enough to enable the court to review intelligently the Commission's decision. *Kosciusko County, etc.* v. *Public Service Comm. supra.'*

Also see *Public Service Commission* v. *Fort Wayne Union Ry. Co.* (1953), 232 Ind. 82, 111 N. E. 2d 719; *Indianapolis and Southern Motor Express, Inc.* v. *Public Service Commission* (1953), 232 Ind. 377, 112 N. E. 2d 864. Although these cases deal with orders of the Public Service Commission *the principle applies to any case of judicial review of administrative decisions."* (Emphasis added.)

Clearly *Carlton's* holding, applies to our judicial review of the administrative decisions of the Full Industrial Board of Indiana. To paraphrase *Carlton's* above quotation from the *Wabash Valley* case,

The finding that [an employee was not injured by accident arising out of and in the course of his employment] is simply a conclusion from all the evidence. The [Full Industrial Board] should find the facts specifically and not generally. The findings of fact must be specific enough to enable the court to review intelligently the [Board's] decision.

*Carlton* is the culmination of a trend, one manifestation of which is noted in § 12.7 of the 1968 Supplement (by Geoffry Segar, Esq., of the Indianapolis bar) to Small, WORKMEN'S COMPENSATION LAW OF INDIANA, which paragraph opens with the statement: "After moving for a time in the direction of accepting rather vague findings of fact

dence in the case at bar and the wide range of possible inferences which reasonably may be drawn from it, make it logically impossible for us to assume that the board found, *sub silentio,* the ultimate facts necessary to support its conclusion. *Mousley* v. *Curry,* 124 Ind. App. 280, 117 N. E. 2d 280 (1954) ; *Cole* v. *Sheehan Const. Co.,* 222 Ind. 274, 280, 53 N. E. 2d 172 (1944). Thirdly, the wording of the present "finding" indicates that there is more than a remote possibility that the Board may have employed erroneous principles of substantive law in reaching its conclusion that the injury did not arise out of the employment.

A look at the evidence reveals that there are only a few uncontroverted facts. It is undisputed that appellant's injury occurred when he collided with a door in his employer's factory during his working hours. And there seems to be no question but that immediately prior thereto, and in the same room where the injury occurred, a co-worker had slipped up behind appellant and had loosed the strings of appellant's work-apron. Exactly where appellant was when that prank was played upon him and exactly what work he was then performing is in sharp dispute. By appellant's version he was at a point only eight or ten feet from the door. He reacted as one who had been goosed and may have taken one running step forward but didn't know what he had in mind. From the testimony of other witnesses, however, the appellee adopts the version that appellant was some forty feet from the door when his apron strings were pulled. That while chasing the prankster that distance he threw his glove at him. That he lost his balance and in trying to regain it, fell against the door.

Appellant is apparently the only witness who testified concerning whether any previous horseplay incident had ever

from the Industrial Board, the [Indiana Appellate] Court seems now to be returning to a stricter standard of sufficiency." *Stoner* v. *Howard Sober,* 124 Ind. App. 581, 118 N. E. 2d 504 (1954); *Mousley* v. *Curry,* 124 Ind. App. 280, 117 N. E. 2d 280 (1954); *Poke* v. *Peerless Foundry Co.,* 124 Ind. App. 544, 119 N. E. 2d 905 (1954); and *Guevara* v. *Inland Steel Co.,* 121 Ind. App. 390, 95 N. E. 2d 714 (1950).

occurred in the plant. That testimony is characterized by appellant's counsel as showing "a long series of pranks identical to the one here involved." Appellant, himself, seems merely to have said that the incident preceding the injury was a repetition of similar action against him by the same employee and that this employee had pulled his apron strings upon every occasion when he thought he could sneak up behind appellant and get his goat. Appellant admitted he had not reported the previous incidents. Appellee's general superintendent saw appellant fall, but neither he nor other witnesses seem to have been asked whether they had witnessed prior incidents.

Although *In re Loper, supra,* (64 Ind. App. 571, 116 N. E. 324) and *Kokomo Steel and Wire Co.* v. *Irick, supra,* (80 Ind. App. 610, 141 N. E. 796) both place great emphasis on the workmen's habitual indulgence in horseplay and the employer's knowledge thereof as rendering the horseplay in those cases a condition of the employment, I would hold that all horseplay is a condition, or risk, of all employments wherein work is performed in proximity to other workers. (See the discussion, *supra,* of *Chicago, etc., Ry. Co.* v. *Clendennin* [81 Ind. App. 323, 143 N. E. 303].) However, previous incidents, if any, of the untying of appellant's apron by the same prankster could have a bearing on the question of whether appellant joined the horseplay.

Finding the ultimate facts essential to a determination of whether appellant's accident arose out of his employment requires the acceptance of some testimony as probably true and the rejection of other testimony as probably untrue. But no matter which testimony is believed and which is disbelieved, there still remain essential facts to be found. Such facts can be found only by drawing inferences. The big question in this case is whether appellant "participated"; whether, in effect, he was injured as a result of his own horseplay and not as the causally uninterrupted result of the prank played upon him by the co-worker. This quite obviously

means that a determination must be made as to subjective facts, such as the state of mind of the appellant, his intent (or want of intent) between the time the prank was played upon him and the time he was injured. Such determination can be made only by drawing inferences from the objective facts found.

There are many inferential possibilities involved in this case: Appellant's reaction to the prank could have been a mere reflex, such as in *Loper* where "the turning of said air upon the employe at said time caused him to quickly jerk and straighten his body" rupturing a pre-existing abscess. Or his response, even though it may have commenced as a reflex, could have continued as an emotional response hardly more volitional than a reflex, as in *Verschleiser* v. *Joseph Stern Son, Inc., supra,* (229 N. Y. 192, 128 N. E. 126). There the court said of a man who, when "surprised by physical assault or insult," strikes back in self-protection, that "[h]is act is as involuntary as that of closing the eye to avoid dust, the same action and reaction which the law recognizes in its definition of manslaughter." (128 N. E. at 128.) It is also a matter of common knowledge among those who have worked where there is horseplay that different men react differently to pranks. Emotion, or rage, seems instantly to take control of some men. They may not regain rational control of their actions for several minutes. Others accept the prank, not as an assault or as an insult, but as an invitation to join in the fun, as with children chasing each other in play. Still others seem to react not at all, or only quite deliberately and unemotionally, sometimes merely reporting the matter to the boss. There are, of course, other reactions and only a psychologist could classify or categorize the types of human behavior which are responsive to provocations of the variety commonly known as horseplay. But it does not require a knowledge of psychology to enable one to recognize that pranksters make it a habit to harass those whose reactions are the most violently uncontrollable.

Throughout this opinion I have referred to what appellant's co-worker did to him as a "prank." By the use of that term I intend to convey the idea of a mischievous teasing or "sportive act" (as in *Kokomo Wire,* 80 Ind. App. at 611). In so characterizing that act I admit to having thereby drawn an inference. I drew it, however, not from the evidence but from the Board's finding that the two were "involved in horseplay." Were it not for that finding, the possibility would exist that the act was, indeed, a malicious act, an act inspired by ill will, an assault intended to provoke a fight or to harm the appellant by interfering with his work and thus driving him into a rage. Were I the trier of fact, I would not have drawn such an inference. I approve the inference of "sport" implicit in the Board's finding of horseplay. I mention the other possibility merely to illustrate the range of findings open to the trier of fact and to disavow any intent to usurp the Board's fact finding function.

Even in those cases in which the "undisputed evidence" seems to us to establish essential facts which the Board has failed to find, we are not at liberty to assume such facts in deciding whether the award is contrary to law. Such was the holding in *Cole* v. *Sheehan Construction Company,* 222 Ind. 274, 280, 53 N. E. 2d 172 (1944), wherein the Supreme Court said:

> "The Appellate Court found that the undisputed evidence produced by the appellant established that she and the decedent were husband and wife and they were living apart at the time of his death for their own convenience. The court concluded that, as a consequence, the appellant was entitled to compensation. *Cole* v. *Sheehan Construction Co.* (1943), 51 N. E. (2d) 391. It is immaterial which party produced the evidence and it does not necessarily follow that there was no conflict in the evidence merely because the testimony was undisputed. A conflict may arise out of the testimony of a single witness, though it is not disputed by any other testimony. *McKee* v. *Mutual Life Ins. Co.* (1943), *ante* p. 10, 51 N. E. (2d) 474. Since the full board made no finding as to some of the material issues the problem presented is not that of determining whether

there is some evidence tending to support an award. *We think, therefore, that it was an invasion of the province of the full board for the Appellate Court to undertake to find the ultimate facts* in the first instance. The statute does not contemplate that the functions of the Industrial Board may be assumed by the courts. The better practice would appear to be to remand the proceeding to the board with directions for it to discharge its statutory duty by finding the essential facts, and by entering an award based thereon." (Emphasis added.)

I would summarize, in the abstract, what I think should be declared the law applicable to this case as follows:

1. The statement that an injury is the result of an accident "arising out of and in the course of the employment" is a conclusion of law and not a finding of fact. The negative thereof is also a conclusion of law.

2. Such a conclusion may be stated by the full Industrial Board as a reason for entering an award which grants or denies compensation, as the case may be, but the conclusion must be supported by a finding of ultimate facts filed with the award.

3. The finding of facts must be specific enough to enable this court to review intelligently the Board's decision. This is to say, we must be able to determine, from the facts so found and without reference to the evidence or to the conclusion stated by the Board, whether the accident and injury arose out of and in the course of the employment.

4. The facts so found by the Board must be sustained by substantial evidence of probative value or by inference reasonably drawn therefrom.

5. Risks of injury incident to horseplay indulged in by fellow employees or incident to most physical attacks by fellow employees are risks or conditions of the employment and if they produce injury to a fellow employee who is in the course of his employment, the injury arises out of the employment.

6. An employee who voluntarily departs from his employment to voluntarily participate in horseplay and is injured thereby has not been injured by accident arising out of his employment.

7. One who responds to an attack made on him while at work (whether made in sport, jest, or with malice) or other provocation by a fellow employee under the compulsion of passion and is thereby injured, but not as the result of his voluntary participation, has been injured by an accident arising out of his employment.

I would reverse the award of the full Industrial Board of Indiana and would remand this proceeding to that Board with directions to vacate and set aside its award and to proceed further in a manner not inconsistent with the views herein expressed.

Pfaff, C.J. concurs in result.

### DISSENTING OPINION

SULLIVAN, J.—I believe the Indiana Supreme Court opinion in *Carlton v. Board of Zoning Appeals* (1969), 252 Ind. 56, 245 N. E. 2d 337, requires a result contrary to that reached by the majority opinion. To this extent, therefore, I agree with Judge White's dissent.

I cannot, however, subscribe to Judge White's desire to resurrect *Inland Steel Co. v. Lambert* (1917), 66 Ind. App. 246, 118 N. E. 162, which decision was overruled by *Empire Health, etc. Ins. Co. v. Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664. In my view, the holding that a finding of "an accident arising out of and in the course of employment" is a finding of ultimate fact, not a conclusion of law, as contained in the latter case, remains cogent, logical and practical.[1]

---

1. An excellent definition of "ultimate fact" was made by the Ohio Court of Appeals in *Scott v. Cismadi* (1947 Ohio), 74 N. E. 2d 563:
   "Ultimate facts lie in the area between evidence and a conclusion of law. They are the essential and determining facts on which

In Judge White's view the *Carlton* case, *supra*, requires that the *Empire Health* decision be overruled and that the *Inland Steel* precedent be reinstated. His premise, as stated, necessarily depends upon language from *Wabash Valley Coach Co.* v. *Arrow Coach Lines* (1950), 228 Ind. 609, 94 N. E. 2d 753, as quoted in the *Carlton* case and in Footnote 10 of Judge White's dissent herein.

I sincerely believe that my learned brother confuses the "conclusion of law" dealt with in the *Wabash Valley Coach* case with the conclusion of ultimate fact dealt with in the *Carlton* case.[2]

---

the final conclusion of law is predicated. They are deduced by inference from evidentiary facts, which can be directly established by testimony or evidence."

This court has recognized that the distinction between ultimate facts and conclusions of law is not always clear. See *Oliver* v. *Coffman* (1942), 112 Ind. App. 507, 45 N. E. 2d 351. However, in *Guevara* v. *Inland Steel Co.* (1951), 121 Ind. App. 390, at pages 396-97, 95 N. E. 2d 714, the following analysis was made:

"'* * * It has been said that an ultimate fact is the final or resultant fact that has been reached by the process of logical reasoning from the detail of probative fact. 41 American Jurisprudence, Pleading, § 7, p. 292; *Oliver* v. *Coffman* (1942), 112 Ind. App. 507, 45 N. E. 2d 351; Ultimate facts are determined as a result of an inferential process; the evidentiary facts are the premises and the ultimate facts the conclusions. Therefore, an ultimate fact may be determined as a result of a natural connection of one fact with others by a process of reasoning. A conclusion of law differs in that it is made by attaching a rule of law or legal incident to a particular fact proved. It is the process by which the result is attained which is determinative of the distinction in the particular case. An act or circumstance is none the less a fact merely because it may also be reached or considered as a conclusion of law. *Levins* v. *Rovegno* (1886), 71 Calif. 273, 12 Pac. 161; *Blake* v. *Gunderson* (1923), 46 S. Dak. 642, 195 N. W. 653.''

2. In *Wabash Valley Coach Co.* v. *Arrow Coach Lines, supra,* the court quite succinctly stated that it was considering a conclusion of law as follows:

"The finding upon which the order herein sought to be vacated is based, as above set out, recites only that the application is granted, and that a certificate of public convenience and necessity be issued to Arrow Coach Lines, Inc.; and *there are no findings of fact set out in the order* upon which an order for a certificate of public convenience and necessity could be based. *Kosciusko County, etc.* v. *Public Service Comm.* (1948), 225 Ind. 666, 77 N. E. 2d 572. The finding that a certificate of public convenience and necessity should be granted is simply a conclusion from all the evidence without any special finding of fact upon which the conclusion can be reached.

To be sure, both such conclusions standing alone were insufficient to permit adequate judicial review. *Carlton* stands for the proposition that neither conclusions of law standing alone, nor conclusions of ultimate fact standing alone will support awards or decisions of quasi-judicial administrative agencies.

In the opinion of this writer this is the only significance which can be read into *Carlton's* citation of and reliance upon *Wabash Valley Coach Co., supra.*

Judge White further states that reversal of the board's award is required because conflicts in the evidence make it impossible to "assume that the board found *sub silentio,* the ultimate facts necessary to support its conclusion." The latter statement assumes that the *Inland Steel* case is correct to the extent that a finding of "an accident arising out of and in the course of employment" is a conclusion of law. If, however, as I believe, such finding is one of ultimate fact the *Carlton* case becomes operative only insofar as it requires detailed findings of fact to support the ultimate fact. I believe the *Carlton* decision is operative only in this respect. This, therefore, constitutes the substance of and basis for my dissent.

The majority opinion does not apply, distinguish or refer to the *Carlton* case. It holds, however, that "the findings made are sufficient and are the only findings required by the [Workmen's Compensation] Act." To be sure, the zoning statute

The Public Service Commission should find the ultimate facts specifically and not generally. The findings of fact must be specific enough to enable the court to review intelligently the Commission's decision. *Kosciusko County, etc.* v. *Public Service Comm., supra.*" (Emphasis supplied)

On the other hand, the mere fact that the *Carlton* opinion does not specifically label the five requisite statutory zoning determinations as "ultimate facts" does not, in my opinion, change or affect the nature and character of such determinations. They are what they are—findings of ultimate fact.

And like *Carlton, Kosciusko Co. etc.* v. *Public Service Comm.* (1948), 225 Ind. 666, 77 N. E. 2d 572, cited therein concerns a conclusion of ultimate fact.

which was involved in the *Carlton* determination, being Indiana Acts 1955, ch. 283, § 69, as amended, as found in Indiana Annotated Statutes § 53-969 (Burns' Repl. 1964), specifically requires additional "detailed" findings to support the finding of the five statutory ultimate facts, i.e., "determinations." No such statutory requirement is here involved. The unmistakable and unambiguous language of the *Carlton* case, however, clearly requires such additional detailed findings *exclusive of statute* in order to assure adequate and hopefully intelligent judicial review. It makes little difference to the adequacy of judicial review whether the particular agency whose determination is under examination is a zoning board, and employment security review board, an industrial board or a public service commission.

I wholly fail to understand the majority's failure to apply the *Carlton* case. If, as required by that decision, detailed findings are necessary in order to permit full and adequate judicial review of zoning determinations such detailed findings are equally desirable and essential to a review of the determinations of other administrative agencies. The directory language of the *Carlton* case is not only clear, unambiguous and unmistakable, but is logical and consistent with its result and the reasoning contained therein.

I would, therefore, reverse and remand the cause to the Industrial Board for further proceedings not inconsistent with this dissent.

NOTE.—Reported in 252 N. E. 2d 612.