**Karen SEILER, Plaintiff-Appellant,**

v.

**Ronald GROW, Defendant-Appellee.**

**No. 30A01–8609–CV–255.**

Court of Appeals of Indiana, First District.

May 14, 1987.

Rehearing Denied June 26, 1987.

Donn H. Wray, Stewart, Irwin, Gilliom, Meyer & Guthrie, Indianapolis, for plaintiff-appellant.

Dale W. Eikenberry, Julie L. Michaelis, Wooden, McLaughlin & Sterner, Indianapolis, for defendant-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Karen Seiler appeals the granting of summary judgment in favor of Ronald Grow in her action against Grow for damages for personal injuries. We reverse.

## FACTS

Seiler was employed as a bartender and waitress at a tavern called The Grow's Nest which was owned by Maxron, Inc., a corporation. Grow and his mother-in-law, Maxine Steiner, owned all the stock in the corporation. Grow was president of the corporation and worked at the tavern daily but on an irregular time schedule. Seiler was working the 11:00 a.m. until 7:00 p.m. shift in February 1981 when the incident which is the subject of this action occurred.

About 11:30 a.m. on February 26th, Les Tilson, the night bartender, appeared at the tavern and announced he had an appointment to see Grow. Grow arrived about noon, went to his office, and returned with a .38 caliber automatic pistol to an area where Tilson and one Jerry Green were sitting and Seiler was standing. As Grow was demonstrating the operation of the pistol, it discharged, wounding Seiler in the foot.

In Grow's deposition, which was before the trial court in the summary judgment hearing, he stated he owned the pistol and brought it to the tavern to demonstrate its operation to Tilson and Seiler because Seiler wanted the pistol when she was alone in the tavern for protection from "weirdoes" who sometimes came into the tavern. On the other hand, Seiler presented evidence by way of her deposition that Tilson told Jerry Green that he wanted to buy a gun and was looking to buy a gun, and that Grow brought the gun to the area where Tilson and Green were sitting and the men began talking about an automatic. Seiler claims she was busy and paid no attention to the gun.

Seiler applied for and received worker's compensation benefits. Seiler testified Grow told her to tell the compensation carrier he was showing her how to use the gun so she would be able to obtain compensation.

The trial court granted summary judgment to Grow on the theory the case was within the exclusive remedy provisions of

the Indiana Worker's Compensation Act, Indiana Code section 22-3-2-6.

## ISSUE

Did the trial court properly grant summary judgment in favor of Grow on the theory that Seiler's exclusive remedy was worker's compensation?

## DISCUSSION AND DECISION

Our standard of review in summary judgment cases is the same as that used by the trial court. *Brenneman Mechanical and Electrical, Inc. v. First National Bank of Logansport* (1986), Ind.App., 495 N.E.2d 233, (transfer pending); *First Savings and Loan Assn. v. Treaster* (1986), Ind.App., 490 N.E.2d 1149, *trans. denied.* Summary judgment is a procedure for applying the law to the facts when no factual controversy exists, *Reeder v. Ramsey* (1984), Ind.App., 458 N.E.2d 682, and is properly granted where there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Marion Teachers Association v. Grant County Special Education Cooperative* (1986), Ind.App., 500 N.E.2d 229, (transfer pending). In reviewing a summary judgment, we look to see if any genuine issue of fact exists, and, in so doing, we construe all matters liberally in favor of the non-moving party and resolve all doubts against the movant. *Brenneman,* at 240; *Reeder,* at 684. Summary judgment may not be used as a substitute for trial where factual disputes remain, or where undisputed facts give rise to conflicting inferences which could affect the outcome of the case. *Reeder,* at 684. We review the granting of summary judgment here in the light of the foregoing rules.

It is clear that if Seiler's injury arose out of and in the course of her employment, her exclusive remedy was worker's compensation. Ind.Code § 22-3-2-6; *Clem v. Steveco, Inc.* (1983), Ind.App., 450 N.E.2d 550; *Cunningham v. Aluminum Company of America, Inc.* (1981), Ind.App., 417 N.E.2d 1186. However, an injured worker may sue a third-party tortfeasor who is neither the employer nor a person in the same employ. Indiana Code section 22-3-2-13; *Martin v. Powell* (1985), Ind.App., 477 N.E.2d 943, *trans. denied.* Seiler's employer was Maxron, Inc., the corporation, not Grow. Therefore, unless Grow was "a person in the same employ", as we have defined that term, Ind.Code § 22-3-2-13 would seem to permit this action.

In determining whether or not Seiler's injuries were within the exclusivity provision of the worker's compensation act, or whether Grow, at the time of the occurrence of the incident in question, was a person in the same employ and immune from a tort action, we look to two recent decisions of this court, *Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168, and *Martin v. Powell* (1985), Ind.App., 477 N.E.2d 943, *trans. denied.*

In *Skinner,* the claimant was taking a coffee break when Martin, a co-employee, asked Skinner to perform a job related task. An altercation ensued wherein Martin struck Skinner inflicting certain personal injuries. We held the injury arose out of and in the course of Skinner's employment, and that worker's compensation was his exclusive remedy. Consequently, we affirmed the dismissal of Skinner's tort action.

On the other hand, in *Martin,* we held that an employee who was engaging in horseplay by sneaking up behind a nurse seated at a desk and pulling her chair from under her causing her to fall to the floor whereby she was injured, was not acting in the course of his employment and, thus, was not immune from a tort-action. We stated in *Martin* at 945:

"In the case before us, it is undisputed that Rebecca Martin was acting in the course of her employment when she was injured. It is equally clear that Steven Powell was not acting in the course of his employment when he engaged in the horseplay which resulted in Rebecca's injuries. [Citation omitted.] Consequently, we must conclude that Powell is not entitled to invoke the immunity granted to those 'in the same employ.'"

Also, in *Martin,* we distinguished *Skinner,* on the ground "that Skinner's injuries

resulted from a purely work-related incident. Martin assaulted Skinner because he was unhappy with Skinner's attitude toward his work." *Martin*, at 946. Because Powell's horseplay was not work-related, we held he was not entitled to the immunity protection afforded those in the same employ. *Id.*

The crucial issue, therefore, is not what Seiler was doing at the time. Rather, we must focus upon Grow's activities. Like Rebecca Martin, Seiler was at work and acting in the course of her employment, and was entitled to receive worker's compensation. Whether she also may pursue a civil action against Grow depends upon the definition and application of the terms "in the same employ" as used in Ind.Code § 22–3–2–13. *Martin*, at 945. As we pointed out in *Martin*, a defendant is not immune from a common law tort action merely because he has the same employer as the plaintiff. The defendant is entitled to the statutory immunity only when he is acting in the course of his employment at the time the plaintiff sustains a compensable injury. 477 N.E.2d at 945. The worker's compensation act is not designed to insulate co-employees from liability for acts which are not in the course of their employment. *Id.*

Here, there are two differing versions of the incident. If Seiler asked Grow for a pistol for protection from unsavory patrons, and Grow, in response to that request, procured the pistol, and was demonstrating its operation to Seiler when it discharged, Grow was acting in the course of his employment, and was a person in the same employ, and within the statutory immunity. Also, in such case, Seiler's injury clearly arose out of and in the course of her employment, and her exclusive remedy was worker's compensation.

However, if Grow was demonstrating or exhibiting the pistol to Tilson as a prospective purchaser, or if he was showing it off to Tilson and Green, and the gun discharged, Grow was not acting within the course of his employment. In this situation, Grow was not a person in the same employ entitled to the statutory immunity.

If, under this state of facts, a trier of fact determines Grow's negligence was the proximate cause of Seiler's injury, tort liability may attach.

It is at once apparent that there are disputed facts and conflicting inferences. Whether or not Grow was a person in the same employ and insulated by Ind.Code § 22–3–2–13 from civil action, and/or whether Seiler's exclusive remedy was worker's compensation, are extremely fact sensitive issues. Such issues are genuine issues of material fact which can be resolved only by a full trial. Summary judgment was inappropriate.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

SULLIVAN, J., concurs.

NEAL, J., dissents with separate opinion.

NEAL, Judge, dissenting.

I dissent for the following reasons. The resolution of this case depends upon the application of the facts to the cases of *Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168, and *Martin v. Powell* (1985), Ind.App., 477 N.E.2d 943. The issue is whether Grow's actions, resulting in Seiler's injuries, arose out of and in the course of his employment, or whether they were the result of a personal, non-job-related activity. IND.CODE 22–3–2–6 provides that the remedies under the Workmen's Compensation Act are exclusive. However, IND.CODE 22–3–2–13 permits the injured workman to pursue a cause of action against a third person, other than the employer or a fellow servant, even though he has received workmen's compensation benefits from his employer. In *Skinner v. Martin, supra*, the facts revealed that, while Skinner was on a coffee break, Martin approached him and requested him to perform some job-related task. Verbal insults ensued which led to an altercation wherein Martin struck Skinner. We held that the injury arose out of the course of employment because the source of the al-

tercation was work related, citing *Payne v. Wall* (1921), 76 Ind.App. 634, 132 N.E. 707. Because the injury was work related and Skinner and Martin were co-employees, Skinner's exclusive remedy was workmen's compensation, and Martin was immune under IND.CODE 22–3–2–13.

In *Martin v. Powell, supra*, Rebecca Martin was injured while at work, by horseplay initiated by her fellow servant, Powell, when he upset her chair. Martin sued Powell in tort. Citing *Block v. Fruehauf Trailer Division of Fruehauf Corp.* (1969), 146 Ind.App. 70, 252 N.E.2d 612, we noted that Rebecca Martin was injured while acting in the course of her employment, but Powell was engaged in conduct personal to himself. Therefore, Powell was not entitled to invoke the immunity granted to fellow servants. We distinguished *Skinner v. Martin, supra*, because there, Martin's activity was work related, and was not a personal matter. We also said that in the context of the facts of that case, it was irrelevant whether Rebecca Martin applied for and received workmen's compensation because, absent immunity, Powell had a third-person tortfeasor status.

*Block, supra*, stated that an innocent, non-participating victim of a fellow servant's horseplay was entitled to workmen's compensation for injuries. Likewise, an innocent, non-participating victim of a fellow servant's assault may be compensated. *Indiana University Hospitals v. Carter* (1983), Ind.App., 456 N.E.2d 1051. This is so because, from the perspective of the innocent, injured workman, the injuries arose out of and in the course of the employment. It does not necessarily follow, however, that, from the perspective of the co-employee tortfeasor, the same act arose out of and was in the course of the employment. If the act did not arise out of and in the course of employment, but was personal or private in nature to the co-employee tortfeasor, immunity will be denied him, and he will be classified as a third-party tortfeasor. As stated in *Martin v. Powell*, the Workmen's Compensation Act was not designed to insulate co-employees from

acts which were not in the course of the employment.

There remains the question of whether the facts, for summary judgment purposes, fall within the holdings of either *Skinner v. Martin* or *Martin v. Powell*. In Grow's deposition, filed in support of the motion for summary judgment, he stated that he personally owned the pistol in question. He did not know why Tilson was there, but he had brought the pistol to demonstrate its operation to Tilson and Seiler. She wanted a pistol for protection when she was alone in the tavern from "weirdoes" who sometimes come to taverns. In the process of the demonstration, a cartridge remained in the pistol after the clip had been removed, so when Grow pointed it to the floor and pulled the trigger, it discharged, wounding Seiler in the foot. In her Form 12 Application for Workmen's Compensation she stated, "Employee was accidentally shot by owner when he was demonstrating the use of gun." *Record* at 74. That evidence, standing alone, shows that Seiler's injury was job related, and that Grow could claim immunity under *Skinner v. Martin*. It therefore became incumbent upon Seiler to go forward and present a sufficient amount of evidence to create an issue of fact to escape summary judgment.

To that end Seiler points to evidence presented by her that Grow, not Maxron, owned the pistol. She neither carried nor owned a weapon. Tilson arrived at 11:30 a.m. and, without explanation, said he had an appointment to see Grow. When Grow arrived he brought the pistol from his office to the bar area, and the men began to talk about an automatic. When asked in her deposition about any conversation about the gun, Seiler answered, "Just that Les told Jerry he wanted to buy a gun; that he was looking to buy a gun. And I didn't pay any attention because I was busy." *Seiler Deposition* at 33. Seiler further presented evidence in her deposition that when Grow came to the hospital to see her, he told her to tell the insurance company the same story he told them so she could get her workmen's compensation. The story was "that he was showing [her]

how to use the gun"; she replied, "Okay." *Seiler Deposition* at 38. Seiler applied for workmen's compensation and received it.

I am of the opinion that such evidence presented by Seiler does not create an issue of fact that tends to rebut Grow's evidence. She has never denied any of Grow's statements. Tilson's statement was a casual statement to Jerry Green that he wanted to buy *a* gun, not *Grow's* gun. There was no evidence that Grow was engaging in a private matter of selling his personal pistol to Tilson, as Seiler argues, which would create a non-work-related situation. There is no evidence that Grow was off duty, as Seiler argues, for he was not only the president and manager of The Grow's Nest, but he came in daily. The fact that she was not paying attention does not rebut the fact that he was demonstrating the pistol to her.

The majority makes an unwarranted assumption as to what the evidence shows. They assume it shows Grow was demonstrating the pistol to Tilson as a prospective purchaser, or was showing it off to Tilson and Green when the gun discharged. Such is speculation.

I would affirm the decision.